J-E01006-17

2017 PA Super 167

| | |
|---|---|
| J.M. | IN THE SUPERIOR COURT OF |
| Appellee | PENNSYLVANIA |
| v. | |
| K.W. | |
| Appellant | No. 76 MDA 2016 |

Appeal from the Order Entered December 24, 2015
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-523-2014

BEFORE:  BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OLSON,
DUBOW, MOULTON AND SOLANO, JJ.

OPINION BY BOWES, J.:                **FILED MAY 31, 2017**

K.W. ("Mother") appeals the December 24, 2015 order wherein the trial court held her in contempt and stripped her of primary physical custody of the parties' then-four-year-old-son, B.M., and three-year-old daughter, V.M.  As the modification of physical custody is an improper sanction for contempt, we vacate the order and remand for further proceedings.

B.M. and V.M. were born of the marriage between Mother and J.M. ("Father").  After the parties separated, Father filed a child custody complaint on March 20, 2014.  The following day, the parties entered a stipulated custody agreement that accorded Mother primary physical custody of the children pending the custody trial.  As it relates to the present appeal, the trial court entered several orders, including a March 25, 2014 order

scheduling the custody conference, which specifically prohibited relocation without prior court approval pursuant to 23 Pa.C.S. § 5337.

On April 25, 2014, Mother filed a counterclaim to the custody complaint and issued notice of her proposed relocation with B.M. and V.M. from her residence in Pottsville, Schuylkill County, to Lancaster, Lancaster County, approximately one-and-one-half hours away. Father filed a counter-affidavit objecting to Mother's proposed relocation. However, prior to obtaining the trial court's authorization under § 5337, Mother relocated with the children to Lancaster during May 2015, and she purchased property in that county two months later.

Father responded to the move by filing a petition for special relief and contempt. During the contempt hearing, Father established that Mother had relocated to Lancaster without prior court approval and enrolled B.M. in a Lancaster-area preschool without Father's knowledge or consent. On December 24, 2015, the trial court entered the above-referenced order that found Mother in contempt, and, as a sanction, reduced her custodial rights from primary physical custody of B.M. and V.M. to shared custody. The order was to remain in effect until the underlying custody dispute was resolved. The trial court also awarded Father $2,214.00 in attorney fees.

On January 12, 2016, Mother filed a timely notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i). The trial court issued its Rule 1925(a) opinion on January 26, 2016.

Mother presents the following questions for our review:

I. Did the [trial] court err and abuse its discretion by adjudicating [Mother] in contempt of court, where the petition for contempt did not contain the notice and order to appear, as mandated by [Pa.R.C.P. 1915.12] and no order which was allegedly violated was either referenced in the petition or attached to the petition, as mandated by Pa.R.C.P. 1915.12(b) and (c)?

II. Did the [trial] court err and abuse its discretion by finding [Mother] in contempt of court as a result of her move from Pottsville, Schuylkill County, Pennsylvania to Lancaster, Lancaster County, Pennsylvania, without leave of court, where none of the existing custody orders contained the required "relocation" language, as mandated under the Pennsylvania Rules of Civil Procedure and the laws of the Commonwealth of Pennsylvania, and where [Mother's] move was not a relocation, which is defined as: "a change in a residence of a child which significantly impairs the ability of a non-relocating party to exercise custodial rights[,"] since [Mother's] move to Lancaster County did not significantly impair [Father's] ability to exercise his custodial rights, and he in fact was receiving more time with his Children than the original custody order provided, and [Mother] and [Father] always chose the pick[-]up and drop[-]off location, and [Father] never missed any of his custodial time following [Mother's] move to Lancaster County, Pennsylvania?

III. Did the [trial] court err and abuse its discretion by finding that [Mother] was in contempt as a result of her enrolling the parties' son . . . in preschool, allegedly without [Father's] knowledge, permission or consent, where none of the custody orders which were then in place contained "legal custody" provisions, and [the child] was attending preschool only during the time when it was [Mother's] custodial period?

IV. Did the [trial] court err and abuse its discretion by specifically finding that "an appropriate sanction (for contempt) is to award shared custody until the parties undergo trial[,"] and

did the [trial] court err and abuse its discretion by imposing as a sanction for contempt a significant modification of the existing custody order, from a primary physical custody order to a shared custody order?

Mother's brief, at 4-5.

At the outset, we must determine whether the appeal is properly before us. We observe that the trial court's modification of physical custody "until such time as the [matter proceeds to a] pending custody trial" is temporary with respect to the custody determination. Trial Court Order, 12/24/15, at unnumbered 8. It is well-ensconced in Pennsylvania that an interim custody order is not appealable. *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa.Super. 1996). The rationale behind this precept is that, until the trial court has rendered its best-interest determination on the merits, an interim custody order is ephemeral and subject to further modification upon petition. Thus, at first blush, it appears that this portion of the appeal is interlocutory.

However, upon closer examination of the pertinent issue, it is obvious that the instant order is not an interim determination of the children's best interest, and Mother does not challenge the trial court's determination of custody *per se*. In reality, the order in the case at bar is a finding of contempt and a concomitant sanction, which as we discuss *infra*, was entered in contravention of our jurisprudence regarding the modification of custody as a consequence of contempt. While an order granting temporary or interim custody is interlocutory, it is beyond cavil that a finding of

- 4 -

contempt is final and appealable when a sanction is imposed. ***Stahl v. Redcay***, 897 A.2d 478 (Pa.Super. 2006). Thus, the order is appealable.

We first review the propriety of the contempt order, and since we sustain the trial court's finding that Mother was in contempt for relocating with the children without permission and/or enrolling their son in preschool without consulting Father, we will then determine whether the trial court imposed an appropriate sanction.

Preliminarily, we review the merits of the substantive challenges that Mother raises in issues two and three. In issue two, Mother asserts that the trial court erred in finding her in contempt for relocating the children from Schuylkill County to Lancaster County. The crux of Mother's argument is that the custody order that was in effect did not preclude her from relocation. She continues that, although the relevant language was included in at least one of the trial court's scheduling orders, Father failed to attach that order to his contempt petition or demonstrate that she was aware that the order existed. These arguments fail.

It is established: "To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence." ***Hopkins v. Byes***, 954 A.2d 654, 655 (Pa. Super. 2008) (citation omitted). Specifically, "the complainant must prove certain distinct elements[:] (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act

constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **P.H.D. v. R.R.D.**, 56 A.3d 702, 706 n.7 (Pa.Super. 2012).

Instantly, as Mother acknowledges, the trial court's March 25, 2014 scheduling order expressly highlighted in bold type, "No party may make a change in the residence of any child which significantly impairs the ability of the other party to exercise custodial rights without first complying with all of the applicable provisions of 23 Pa.C.S. § 5337 and Pa.R.C.P. No. 1915.17 regarding relocation." Trial Court Order, 3/25/14. Section 5337 of the Child Custody Law instructs that a party wishing to relocate must provide notice of such intent prior to moving, to which any party entitled to receive notice may file objections. The statute continues, "No relocation shall occur unless: (1) [the parties consent]; or (2) the court approves the proposed relocation." 23 Pa.C.S. § 5337(b). However, before a court may approve a proposed relocation several things must occur. First, "[t]he party proposing relocation shall notify every other individual who has custody of the child[,]" and inform them of the particulars of the proposed move. 23 Pa.C.S. § 5337(c) (1)-(4). Next, if a non-relocating party files an objection to the proposed relocation, the trial court is required to hold a hearing in which the party proposing relocation has the burden of proving that the move would serve the child's best interest in light of the factors set forth in § 5337(h) (1)-(10). 23 Pa.C.S. §5337(d), (g), (h) and (i). Absent exigent

circumstances that warrant relocation prior to the evidentiary hearing, the trial court will not approve the move until a full consideration of all the relevant statutory factors addressed during the hearing. 23 Pa.C.S. § 5337(g).

All of the required steps did not occur herein. One month after the entry of the March 25, 2014 order, Mother issued notice to Father of her intention to relocate to Lancaster County with the children. However, after Father filed notice of his objection, Mother relocated without permission in contravention of the March 25, 2014 order directing her to comply with the relocation provision of § 5337. As Mother ignored Father's objection to her proposed relocation and acted unilaterally in moving with the children before obtaining the trial court's approval, the certified record sustains the trial court's finding that Mother was in contempt.

Furthermore, we reject Mother's insinuation that she did not receive notice of the March 25, 2014 scheduling order informing her of the proscription against relocation without prior court approval in compliance with § 5337. The very fact that Mother issued notice of her proposed relocation within one month of the trial court's directive is compelling evidence that she knew of the order and sought to comply, at least initially, with it.

Similarly unavailing is Mother's assertion that her surreptitious move with the parties' children from Schuylkill County to Lancaster County was not

a "relocation." Noting that a proposed move's effect on the non-relocating party's custodial rights is a fundamental component of the statutory definition of relocation, Mother asserts that, since she permitted Father greater access to the children after the move to Lancaster than was required by the custody order, it did not fall within the definition of relocation.[1] Mother cites our holding in **C.M.K. v. K.E.M.**, 45 A.3d 417, 425-426 (Pa.Super. 2012) in support of her position that the move was not a "relocation." The **C.M.K.** Court found that a trial court erred in concluding that the mere fact that a custodial parent issued notice of a proposed relocation was determinative of whether the move would have met the statutory definition of a relocation. We reasoned that whether a custodial parent's decision to move the children to another location was tantamount to a relocation under the Child Custody Law depended upon whether the move significantly impaired the non-relocating party's ability to exercise custody. Nevertheless, we found that the evidence adduced during the relocation hearing established that the proposed move constituted a relocation.

The crux of Mother's position is that, since she increased Father's custodial rights **after she moved** the children to Lancaster without permission, the change did not fall within the statutory definition of

---

[1] Section 5322 of the Child Custody Law provides, in pertinent part, "'Relocation.' A change in a residence of the child which significantly impairs the ability of nonrelocating party to exercise custodial rights."

"relocation," and therefore she was not bound by the procedures outlined in § 5337. This argument, which is premised on strained interpretations of both our holding in *C.M.K.* and the statutory definition of "relocation," demonstrates Mother's general misunderstanding of § 5337.

By definition, a relocation impacts the non-relocating party's ability to exercise custody. However, unlike the issue in *C.M.K.*, *supra*, we need not determine whether the move to Lancaster fell within the statutory definition of "relocation" in this case because Mother clearly believed that it might when she issued notice of the proposed relocation pursuant to § 5337. That decision belies her current assertion that § 5337 was inapplicable. Unlike, the trial court in *C.M.K.*, we are not concluding that Mother tacitly conceded that the proposed move was, in fact, a relocation. To the contrary, we find that, having initiated the relocation procedure pursuant to § 5337, Mother violated the terms of the March 25, 2014 order by ignoring the steps required by the statute.[2]

_____

[2] This case is distinguishable from *C.M.K. v. K.E.M.*, 45 A.3d 417 (Pa.Super. 2012), insofar as Mother's actions deprived the trial court of its ability to consider any evidence to determine whether the proposed move did, in fact, constitute a relocation within the meaning of the Child Custody Law. In *C.M.K.*, the mother followed the correct procedure and the trial court held an evidentiary hearing before determining, *inter alia*, that the proposed move constituted a relocation because it involved changes that would significantly impair the father's ability to exercise his current custodial rights. As Mother abandoned the § 5337 procedures in this case, the required hearing did not occur, and the trial court was unable to confront the precise

*(Footnote Continued Next Page)*

Moreover, although Mother was willing to supplement Father's custodial periods in order to mitigate the harm caused by the move, that fact was but one of ten relocation factors that the trial court would have considered during the full hearing to determine the children's best interest under § 5337(h)(1)-(10), had Mother not usurped § 5337 and relocated to Lancaster County prematurely. Thus, Mother's *post hoc* generosity in seeking to lessen the damage to Father's rights did not negate the fact that, by relocating without permission, she violated the scheduling order directing her to comply with § 5337. No relief is due.

In her third issue, Mother contends that the trial court abused its discretion by finding her in contempt for enrolling B.M. in preschool without Father's knowledge or permission. Essentially, this question relates to whether Mother impinged upon an order regarding legal custody, *i.e.*, "The right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S. § 5322. Mother highlights that none of the then-existing orders specifically addressed who would exercise legal custody. As the record sustains Mother's observation that a relevant determination of legal custody did not exist, we agree with her position that the trial court erred in finding her in contempt in

*(Footnote Continued)* ——————

issue that Mother is trying to resurrect on appeal, *i.e.*, whether the move constituted a relocation.

this respect. Stated plainly, while Mother demonstrated a remarkable lack of cooperation by acting unilaterally to place B.M. in the daycare of her choice, she did not contravene an existing court order. Thus, the fundamental element of civil contempt is missing in this case. *See Hopkins, supra*; *P.H.D.*, *supra*. In light of our decision to reverse this aspect of the contempt order, we remand the matter for the trial court to re-evaluate the award of counsel fees.

Next, having sustained the trial court's finding of contempt as it relates to Mother's unauthorized relocation to Lancaster, we review the propriety of the court's decision to alter physical custody as a contempt sanction. This issue subsumes the first and fourth issues that Mother lists in her statement of questions presented on appeal. Mother contends that the trial court violated her due process rights by modifying the custody arrangement concomitant with the contempt adjudication. The crux of Mother's argument is that Father's contempt petition provided insufficient notice that custody would be at issue during the contempt proceedings. She continues that, by awarding custody to Father without affording notice that the existing custody order could be modified, the trial court denied her the opportunity to defend against modification.

Father counters that Mother had notice that he sought custody as a result of her alleged contempt. He points out that his petition entreated the court to grant him custody of their children and the proposed order that he

attached to his petition provided, "Plaintiff is granted primary custody until further order of court." Petition for Special Relief and Contempt, 9/23/15, at unnumbered page 2, and attached proposed order. Thus, Father contends that Mother had the opportunity to prepare for the contempt proceedings and to advocate her position vis-à-vis the custody request. For the reasons that follow, we disagree.

It is settled that an adjudication of contempt is not a proper basis to modify an existing custody arrangement.[3] **See Clapper v. Harvey**, 716 A.2d 1271, 1275 (Pa.Super. 1998) ("a mother's violation of a custody order may be an appropriate foundation for a finding of contempt, but it cannot be

_____

[3] The Child Custody Law outlines the sanctions for contempt as follows:

> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $500.
>
> (iii) Probation for a period of not more than six months.
>
> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.

23 Pa.C.S. § 5323(g).

the basis for an award of custody"); ***Rosenberg v. Rosenberg***, 504 A.2d 350, 353 (Pa.Super. 1986) ("A custody award should not be used to reward or punish a parent for good or bad behavior"). This Court has confronted several cases where the trial court awarded one party custody as a sanction for the other party's contumacious conduct. ***See e.g. Langendorfer v. Spearman***, 797 A.2d 303 (Pa.Super. 2002); and ***Everett v. Parker***, 889 A.2d 578, 581 (Pa.Super. 2005); ***cf. Steele v. Steele***, 545 A.2d 376 (Pa.Super. 1988) (noting that it is generally improper for trial court to modify custody arrangements without petition for modification before it). The effect of this jurisprudence is that a trial court's ability to alter custody as a contempt sanction is restricted to circumstances where the responding party is given express notice that custody will be at issue during the contempt proceeding and the modification is based upon the determination of the child's best interest.

In ***Langendorfer***, ***supra***, the mother, who maintained partial physical custody of her son during the summer, filed a contempt petition against the father asserting that he had violated the existing custody arrangement. Notably, the Mother's contempt petition failed to include any request to transfer custody and the order scheduling the contempt hearing did not notify either party that custody would be an issue during the contempt proceedings. Moreover, there was no indication in the record that the trial court consolidated the mother's contempt petition with the father's

previously filed motion to temporarily adjust the custody schedule. Following the contempt hearing, the trial court awarded the mother sole legal and physical custody of the child. However, relying upon the precept discussed in **Choplosky v. Choplosky**, 584 A.2d 340, 342 (Pa.Super. 1990), "without a motion to modify visitation rights before it, a trial court may not permanently alter the visitation rights of [the] parties," this Court vacated the custody order on appeal as violating the father's right to due process.

We reiterated the **Langendorfer** Court's rationale in **P.H.D. v. R.R.D.**, 56 A.3d 702, 707-708 (Pa.Super. 2012), and concluded, "As in **Langendorfer**, Father here had no notice that custody was at issue. Neither the contempt petition nor the notice and order to appear held out the prospect of custody modification." Similarly, in **Everett**, **supra** at 581, this Court explained, "When modification of custody is sought by a custody contempt petitioner, the respondent must be given particular notice of that objective." In reaching that determination, we reasoned that the requisite notice must appear both in the body of the contempt petition and in the order to appear. **Everett**, **supra** at 581.

In **Everett**, a father filed a *pro se* contempt petition against the mother who maintained primary custody of his child. While the third page of the contempt petition requested a change in the custody arrangement, the father failed to serve the petition on Mother properly. Instead, he mailed a

copy of the petition to an attorney who represented mother during prior dependency proceedings and to the family's CYS caseworker. Neither the mother nor her former attorney, who never entered an appearance in the custody dispute, appeared at the contempt hearing. Nevertheless, based upon the caseworker's statement that she had provided the mother with actual notice of the date and time of the hearing, the trial court determined that the mother received sufficient notice of the father's petition. Accordingly, it held the contempt hearing *ex parte*, found the mother in contempt, and modified the existing custody order by awarding the father primary custody of his son. On appeal, we vacated the contempt order.

As it relates to the issue in the case at bar, the **Everett** Court concluded that the trial court violated the mother's right to due process by modifying the custody order as part of the contempt proceedings because the mother was denied specific notice that custody would be at stake in the contempt proceedings. Noting that the mother was not properly served with the contempt petition that implicated the custody arrangement or with the notice of the scheduled contempt hearing, we determined that the caseworker's notification to the mother concerning the time and date of the proceedings was insufficient. Specifically we reasoned, "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest,

- 15 -

such as physical freedom, or a parent's custody of her child." ***Everett***, ***supra*** at 580.

Thus, as the foregoing discussion of relevant binding authority highlights, a trial court may transfer physical custody at the conclusion of a contempt hearing only when the modification suits the child's best interest in light of the statutory factors and the respondent has been given particular notice of that objective. In reaching our decision, we stress that the reason for the notice requirements is more than a procedural formality. Indeed, without particularized notice that custody would also be at issue at the contempt hearing, a respondent would not be prepared to litigate the custody dispute during the contempt proceedings and the trial court would be denied the benefit of both parties' relevant evidence concerning the children's well-being. Consequently, as this Court previously explained in ***Langendorfer***, ***supra*** at 309, the trial court would lack the required information to make the "quintessentially crucial judgment" as to the children's best interests.

It is of no moment that the trial court's modification was ostensibly temporary because the foregoing principles apply with equal effect to provisional orders. First, all custody awards are temporary insofar as they are subject to modification by an ensuing court order any time that it promotes the child's best interest. Thus, by force of circumstances, no

award of child custody is permanent regardless of whether the order is styled as interim or final.

Second, as the prolonged history of this case demonstrates, the judicial machinery may stall or become so congested that a temporary order forms the *de facto* status quo regardless of its purported impermanence. Instantly, Father filed the underlying custody complaint on March 21, 2014, yet the custody trial was not scheduled until approximately two years later, and then that proceeding was stayed indefinitely because the custody evaluation that was performed during Spring 2014 had grown stale. Indeed, as of the date of this writing, the theoretically "temporary" order that Mother challenges herein has governed the parties' custody arrangement for approximately sixteen months since its inception on December 24, 2015. There still has not been a formal determination of the children's best interest that would qualify as a "final" order.[4] Hence, the interim order was temporary in name only. It carried the same force as a final custody order for approximately one and one-half years. Accordingly, we find that even an ostensibly temporary order granting the modification of physical custody

_____

[4] This case has utterly defied our Supreme Court's desire to resolve child custody issues promptly. Compare the above-referenced procedural history with Pa.R.C.P. 1915.12(b) and (c) regarding the prompt disposition of custody cases (generally trial should be scheduled within 180 days of the custody complaint and trial shall commence within 90 days of the scheduling order).

implicates the *Langendorfer* Court's concerns about the evidentiary deficit where the respondent did not receive particularized notice that custody would be at issue in a contempt proceeding.

Thus, for all of the foregoing reasons, we hold that absent an award of special relief under Rule 1915.13, which we discuss *infra*, it is an abuse of discretion for the trial court to transfer custody from one party to the other as a contempt sanction and that custody can be modified only where the parties receive advance notice that custody is to be an issue at the contempt hearing and modification is based upon the determination of the child's best interest.

Having established the appropriate legal framework, we next address Mother's and Father's countervailing arguments regarding whether Father satisfied the particularized notice requirements we outlined in *Langendorfer*, *supra* and its progeny. Pursuant to Pa.R.C.P. 1915.12(a), a contempt petition must include a section entitled "Notice and Order to Appear." The rule prescribes the form and content of the notice and order to appear. Herein, Father's petition for contempt and special relief requested a modification of custody, but it lacked the required notice and order to appear as outlined by Rule 1915.12. A petition for special relief is not analogous to a motion for modification, which not only implicates a thorough analysis of the children's best interest under § 5328(a), but also necessarily provides express notice that custody would be at issue. As Father neglected to issue

the required notice and order to appear, he did not provide Mother notice that the existing custody order could be modified as a consequence of the contempt proceedings.[5] Moreover, both the original scheduling order that the trial court issued and its revised order failed to mention custody at all.

Presently, as in **Langendorfer**, there was no petition to modify custody before the trial court during the contempt proceedings, Father neglected to provide the notice and order to appear pursuant to Rule 1915.12(a), and the scheduling orders that the court issued did not disclose that the trial court would address the matter of physical custody during the contempt proceeding. While Father included a custody-related prayer for relief in his contempt petition and the proposed order that he submitted for

---

[5] We reject Mother's related assertion that Father's failure to accomplish strict compliance with the Pa.R.C.P. 1915.12 notice requirements warrants overturning the trial court's contempt finding. It is well-settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. **Everett v. Parker**, 889 A.2d 578, 580 (Pa.Super. 2005). Instantly, notwithstanding the procedural defects that impaired the court's ability to modify physical custody, Father's petition notified Mother that he sought a finding of contempt against her based upon her relocation with the children to Lancaster. Plainly, Mother does not contend that Father failed to provide notice of the petition or the evidentiary hearing. She merely complains that he failed to attach a "Notice and Order to Appear" pursuant to Rule 1915.12(a). Indeed, Mother appeared with counsel at the appropriate place and time for the contempt hearing and vehemently contested Father's petition. Therefore, Mother's challenge to the propriety of the contempt determination based upon the noted defects is unpersuasive.

the court's approval, Mother was not provided the requisite specific notice in the contempt petition and the attendant orders directing her to appear that her custody rights would be at stake. *See Everett*, *supra*. Accordingly, Father's notice to Mother that he sought to modify the custody arrangement during the contempt proceedings was deficient, and, absent notice of that objective, the trial court erred in modifying custody as a contempt sanction.

Finally, we observe that the certified record demonstrates that the trial court did not intend to issue special relief pursuant to its authority under Pa.R.C.P. 1915.13. Under appropriate circumstances, a trial court may modify a custody order temporarily pursuant to Rule 1915.13.[6] *See Choplosky*, *supra* at 343, ("'special relief' may in some cases be appropriate (and necessary) where the situation is such that, for example, temporary modification of custody or visitation rights would preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should

---

[6] Rule 1915.13 provides as follows:

At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include but is not limited to the award of temporary custody, partial custody or visitation; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

remain."); 23 Pa.C.S. § 5323(b) ("The court may issue an interim award of custody to a party who has standing . . . in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters."). However, the trial court did not enter an order to that effect in the case at bar. In fact, the trial court unquestionably granted Father shared physical custody as an impermissible sanction for contempt. Indeed, the court explicitly directed, "[The] appropriate sanction [against Mother] is to award shared custody until the parties undergo the trial." Trial Court Order, 12/24/15, at unnumbered page 7.

Accordingly, for all of the foregoing reasons, we affirm the trial court's adjudication of contempt for Mother's relocation in contravention of the order directing compliance with § 5337, reverse the finding that Mother was in contempt for placing B.M. in the preschool of her choice, vacate the court's contempt sanction awarding Father shared physical custody, and remand the matter for the trial court to recalculate its award of attorney fees in light of our holding. In light of the delays that have plagued this custody litigation, we direct the trial court to hold the custody hearing expeditiously.

Order affirmed in part, reversed in part, and remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017