J-S53002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| I.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.C. | : | No. 1410 EDA 2020 |

Appeal from the Order Entered June 24, 2020
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2010-5932

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED:  FEBRUARY 22, 2021**

I.C. ("Father") appeals from the order entered on June 24, 2020, in the Court of Common Pleas of Delaware County, that modified the existing custody order.  The June 24, 2020 order granted E.C. ("Mother") sole physical custody and suspended Father's partial physical custody with respect to the parties' daughters, L.C., born in December of 2004, and T.C., born in August of 2006 (collectively, "the Children").  Upon careful review, and for the reasons that follow, we vacate the June 24, 2020 order, and remand the matter for proceedings consistent with this Memorandum.

The certified docket reveals that Father and Mother have been involved in custody litigation since 2010.  Throughout the underlying matter, Father

_____

[*] Retired Senior Judge assigned to the Superior Court.

has alleged, largely unsuccessfully, that Mother has alienated the Children from him and that she has been in contempt of then-existing custody orders.

The final agreed-upon order issued by the Honorable Dominic F. Pileggi on March 29, 2016, which awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody on alternating weekends and on Wednesday evenings, is relevant to this appeal.  Order, 3/29/16.  In addition, the order awarded each party three non-consecutive weeks of vacation in the summer, and it set forth a holiday schedule.  *Id.* Finally, the order specified that the custody exchange would occur at a public location in Ridley Park, Pennsylvania ("custody exchange location").  *Id.*

For reasons unclear in the certified record, the relationship between Father and the Children deteriorated.  By order dated October 31, 2017, Judge Pileggi directed that the parties and the Children attend reunification counseling with Edward J. DiCesare, Ph.D.  Order, 10/31/17, at ¶ 3.

In December of 2017, Father filed a petition to enforce the above-described orders.  Following a conference before the court-appointed custody master on March 13, 2018, the master found that Mother violated the October 31, 2017 order by not producing the Children at their scheduled counseling sessions with Dr. DiCesare.  Temporary Order, 3/13/18, at ¶ I. Therefore, the temporary order dated March 13, 2018, provided that Mother would arrange for a third party to transport the Children to their counseling

sessions; otherwise, the order provided that Father will provide transportation for the Children.[1]  *Id.*

Following the next custody conference on August 14, 2018, a temporary order directed that the "order dated 3/29/2016 is still in effect; however[,] it shall not be enforced with respect to periods of custody."  Temporary Order, 8/14/18, at 1.  That order provided that the parties "shall continue with mandatory counseling with Dr. Edward DiCesare.  Parties shall follow recommendations of Dr. DiCesare and shall present recommendations for future custody periods [at the] next [court] listing."  *Id.*

---

[1]  Soon thereafter, on April 19, 2018, Mother filed a petition for protection from abuse ("PFA") on behalf of the Children.  Mother alleged that during the custody exchange on April 18, 2018, "Father pulled [T.C.] from [M]other's car by her hair. . . .  [L.C.] was pushed into something."  PFA Petition, 4/19/18, at ¶ 11.  On April 19, 2018, the court granted a temporary PFA order prohibiting Father from having contact with the Children until further order of court.

Mother's counsel stated on the record in open court that he represented Mother in the PFA action involving "a serious and significant incident—. . . the [custody exchange location] incident."  N.T., 6/18/20, at 102.  Father described the incident alleged in the PFA petition as "the hair-pulling incident." *Id.* at 89.  However, Mother's counsel stated that the incident occurred in the spring of 2019.  *Id.*  Based upon the date of the temporary PFA order, we conclude that Mother's counsel provided the wrong year in his statement on the record in open court.

By way of further background, Mother's counsel stated on the record in open court that the parties "reenlisted" Dr. DiCesare after the "hair-pulling incident" in order "to get . . . Father and these two kids back on track."  *Id.* at 102–103.

- 3 -

There is no indication that Dr. DiCesare's recommendations for custody were presented during the next custody conference, which occurred on October 22, 2018. A subsequent temporary order again maintained the March 29, 2016 order and directed that the parties coordinate weekly therapy sessions with Dr. DiCesare. Temporary Order, 10/22/18, at 1, 4. Further, it provided that the custody matter shall be relisted in ninety days to review Dr. DiCesare's recommendations. *Id.*

The docket reveals that the next custody conference did not occur until July 9, 2019. A temporary order provided, "[T]he order of 3/29/2016 shall remain in effect but shall not be enforced with respect to periods of custody except as provided in this temporary order." Temporary Order, 7/9/19, at 1. The temporary order directed that Father shall have custody of the Children one time each week from 6:30 p.m. until 10:30 p.m., *inter alia*. *Id.* at 3.

The final custody conference occurred on September 23, 2019. By temporary order that same date, Father was awarded partial physical custody on Tuesdays from 7:15 p.m. until 9:30 p.m. and on Wednesdays from 6:35 p.m. until 9:30 p.m. Temporary Order, 9/23/19, at 2. At that time, Father resided in Philadelphia, Pennsylvania. N.T., 6/11/20, at 37. Mother resided in Boothwyn, Delaware County, Pennsylvania. *Id.* The temporary order directed that on Wednesdays, the Children shall take the Septa Regional Rail "from Marcus Hook [train station] to University City [train station], where Father will pick them up. At the end of the visit, Father will transport them

back home." Temporary Order, 9/23/19, at 4. The order directed that on Tuesdays, Mother "will be driving . . . both ways. This will change if the train trip is successful." *Id.*

On November 7, 2019, Father filed a petition to modify the existing temporary order, wherein he requested shared legal and partial physical custody of the Children every weekend during the school year and shared physical custody during the summer on a week-on, week-off basis. Father's petition consisted of eleven paragraphs, and he attached to his petition the September 23, 2019 temporary order. Father asserted that Mother "is refusing to comply with the current order." Modification Petition, 11/7/19, at ¶ 6. Specifically, Father asserted, "Mother has also tried to manipulate train schedules in terms of stating the girls were on the train." *Id.* at ¶ 10.

Father's petition for modification was listed for February 14, 2020, before the custody master. The custody master reassigned the case, and the custody conference was continued to March 16, 2020. Due to the COVID-19 pandemic, the Court of Common Pleas of Delaware County temporarily suspended hearings, and the custody conference did not occur. Trial Court Opinion, 8/13/20, at 3, n.1.

On February 14, 2020, Father filed a petition for contempt against Mother. Father's petition consisted of exactly the same eleven paragraphs as the foregoing November 7, 2019 petition for modification, and he attached as Exhibit "A" the September 23, 2019 temporary order. Further, Father

requested the same legal and physical-custody awards. The only difference in the petition for contempt was that Father requested, "Also to have [M]other sanctioned by the court and arrested for civil disobedience along with $1500 counsel fees." Contempt Petition, 2/14/20, at 2.

The court scheduled a contempt hearing for April 8, 2020, before the Honorable Nusrat J. Rashid. Because of the above-described temporary suspension of hearings, the matter was continued to June 11, 2020, and the hearing occurred on that date *via* teleconference. Father participated *pro se*, and Mother was represented by counsel. Both Father and Mother testified. The court then continued the hearing until June 18, 2020, for the purpose of performing *in camera* interviews of the Children. *Id.* at 66. On June 18, 2020, Father again participated *pro se*, and Mother was represented by counsel. Following the Children's testimony, Father, but not Mother, testified.

At the conclusion of the June 18, 2020 hearing, the trial court stated on the record, in open court: "I'm not finding Mother in contempt." N.T., 6/18/20, at 107. The court explained that its decision was based on the Children's testimony. *Id.*

Thereafter, Mother's counsel advised the trial court on the record, in open court, that Father has pending a petition for modification of the existing custody order. N.T., 6/18/20, at 111. Mother's counsel explained the procedural history of Father's November 7, 2019 modification petition and stated, in part, that Father's petition is "awaiting a relist before another

Master." ***Id.*** at 111–113. The court then addressed Father and Mother's

counsel as follows:

> THE COURT: So the reason why you haven't gotten the new date is because right after you were in front of [the] Master, COVID hits.
>
>             \* \* \*
>
>      All Masters' hearings stopped.
>
> [FATHER]: Understood.
>
> THE COURT: You get the Judges now for something like this. I'm going to exercise the [c]ourt's discretion regarding the modification and rule on the petition for modification—
>
> [MOTHER'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: —right now. And . . . in my order for the petition for modification, I'm going to cancel the Master's hearing.
>
> [MOTHER'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: . . . I can take jurisdiction of this petition for modification. I believe that it is crucial, necessary[,] and [in] the absolute best interest of these children that I give them some stability moving forward even if it only lasts a couple of months until you get back to court.
>
> [MOTHER'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: Do you have any objection to that, [Father]?
>
> [FATHER]: As best that I understand what's going on, I do not. I trust you.
>
>             \* \* \*
>
> THE COURT: [Mother's counsel]?
>
> [MOTHER'S COUNSEL]: No objection, Your Honor.

N.T., 6/18/20, at 113–115. The trial court then ruled as follows:

> On the modification that is currently pending before the [c]ourt under the same docket number, I'm going to give sole physical custody to Mother. However, I'm going to allow Father to text, call, and initiate FaceTime with the girls directly to their phones. I'm not putting this in the order, but I will say to you, [Father], that I believe that this type of contact is the best way that I can see at this point, not being a child counselor or therapist, to ease your way back into having some sort of relationship with your children.

*Id.* at 115. In addition, the court ordered that the parties "return to Dr. DiCesare." *Id.* at 119. However, Father then informed the court, "At the end [of Dr. DiCesare's therapy], he said . . . I took you as far as I can go. I can't go any further[.]" *Id.* at 120. The court responded that if Dr. DiCesare is unwilling to provide therapy again, "then I strongly encourage the parties to pick somebody new." *Id.*

By order entered on June 24, 2020, the trial court denied Father's petition for contempt. The court entered a separate order on June 24, 2020 ("custody order") that granted Father's petition for modification; however, as the court indicated on the record in open court, the September 23, 2019 temporary order was not modified in Father's favor. Rather, the custody order awarded Mother sole physical custody, suspended Father's partial physical custody, and maintained the parties' award of shared legal custody. In addition, the custody order directed that the parties and the Children "shall resume family and reunification counseling with Dr. DiCesare." Order, 6/23/20, at ¶ 6. Further, the custody order directed, "[I]f Dr. DiCesare is

unavailable, the parties shall mutually agree on a different counselor. If the parties are unable to agree, the [c]ourt shall be immediately notified through the filing of an appropriate [p]etition." *Id.* at ¶ 6(c).

On July 23, 2020, Father, *pro se*, timely filed a notice of appeal from the custody order. On that same date, Father, *pro se,* filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion on August 13, 2020.

On appeal, represented by counsel, Father presents the following issues for our review:

1. Whether the trial court violated [Father's] right to due process by ruling on an outstanding petition . . . to modify custody without notice, during a hearing on a separate petition for contempt[?]

2. Whether the trial court violated [Father's] right to due process by refusing to allow [Father] to introduce evidence, both on the contempt issue and the surprise custody issue[?]

3. Whether the trial court demonstrated bias that violated [Father's] right to due process[?]

4. Whether the trial court erred by failing to perform the necessary analysis when modifying the existing custody order[?]

5. Whether the trial court erred by failing to conform to law in issu[ing] the existing custody order[?]

Father's Brief at 6.[2]

---

[2] In the argument section of his brief, Father failed to comply with Pa.R.A.P. 2119(a) (providing, "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type of distinctively displayed—the particular point

The trial court, in its Pa.R.A.P. 1925(a) opinion, and Mother, in her counseled appellate brief, maintain that the custody order is not a final and appealable order. We address this first. It is well-settled:

> To be appealable, a custody Order must be a final Order under Pa.R.A.P. 702, Final Orders, and 42 Pa.C.S. § 5105, Right to appellate review. For this Court to have jurisdiction, the appeal must be from a final Order unless otherwise permitted by statute. A final Order is one which effectively ends litigation or disposes of the entire case.

**Williams v. Thornton**, 577 A.2d 215, 217 (Pa. Super. 1990) (citations omitted); **see also** Pa.R.A.P. 341(b)(1) (defining a final order as "one that disposes of all claims and all parties.").

The trial court reasoned that the custody order is interlocutory and not appealable because it "was issued on a temporary basis." Trial Court Opinion, 8/13/20, at 9. The court explained, "The order temporarily suspended Father's partial physical custody and ordered reunification counseling. The further proceedings contemplated by the [t]rial [c]ourt are specifically designed to allow reconsideration of its decision, with additional information

---

treated therein, followed by such discussion and citation of the parties as are deemed pertinent."). Instead, Father divided his argument into two parts, both of which have as headings the particular point treated therein. Father addressed all of his issues set forth in the Statement of Questions Involved in his brief in the two parts of his argument.

gleaned from the interim reunification counseling and with a full analysis pursuant to [23] Pa.C.S.A. § 5328."[3]  *Id.* at 11.

The trial court relied upon *Williams*, 577 A.2d 215, and *Sawko v. Sawko*, 625 A.2d 692 (Pa. Super. 1993).  In *Williams*, the father of two children appealed from an order that was entered in response to an emergency petition for custody filed during the pendency of the father's petition to vacate a previous custody award to a third party.  The order on appeal fashioned a custody award and suspended the father's partial custody pending resolution of his petition to vacate custody.  Because the order on appeal temporarily suspended the father's partial custody, this Court concluded that the order was interlocutory and not appealable.  *Williams*, 577 A.2d at 217.

Similarly, in *Sawko*, the mother of one child appealed from an order denying her petition to modify the existing custody order, wherein she requested primary physical custody.  The order, however, increased the mother's partial physical custody rights and scheduled a review hearing for a date certain approximately four months later.  This Court concluded that the order was interlocutory and not appealable.  *Sawko*, 625 A.2d at 696.

---

[3] Section 5328(a) of the Child Custody Act ("Act"), 23 Pa.C.S. § 5328(a), provides an enumerated list of factors a trial court must consider in determining the best interests of a child when awarding any form of custody. Here, the trial court did not consider the Section 5328(a) custody factors, an issue we discuss *infra*.

- 11 -

Mother, in her appellate brief, cites **G.B. v. M.M.B.**, 670 A.2d 714 (Pa. Super. 1996) (*en banc*). In that case, this Court held, "a custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." **Id.** at 720.

In **G.B.**, the order provided for a partial physical-custody award. However, the order was entered pursuant to a prior custody order, "which indicated that temporary orders for visitation would be entered periodically until the scheduled hearing on a date certain," and the date was in the future. **G.B.**, 670 A.2d at 721. Because the order was entered before the court completed its hearing on the merits, we concluded that the order was not final and appealable. **Id.** at 722.

In contrast to the foregoing cases, the instant custody order resolved Father's modification petition; as such, no petition remained pending. Indeed, unlike the temporary orders issued by the custody master, the word "temporary" is not included in the title of the custody order. Further, the instant custody order did not provide that the custody award was made pending resolution of the custody claims between the parties, and it did not schedule a future review hearing.

Nonetheless, as set forth above, the trial court stated that it contemplated further proceedings "designed to allow reconsideration of its

decision." Trial Court Opinion, 8/13/20, at 11. Therefore, the court reasoned that the custody order "was issued on a temporary basis." *Id.* at 9. The trial court's statement to Father made on the record in open court provides insight into the court's reasoning: "[T]here are never any final orders in a custody case because the circumstances that are surrounding the best interests of the children are fluid and change constantly. And cases just keep going[,] and they keep moving." N.T., 6/11/20, at 48–49.

This Court explained long ago that "the availability of modification upon a proper showing by the parties" is implicit in custody orders. *Parker v. MacDonald*, 496 A.2d 1244, 1247 (Pa. Super. 1985). In *Parker*, the order on appeal included language providing that the court would entertain an application for review. However, because the order completely disposed of the parties' rights to custody unless and until a new petition was filed, we held that the order was final and appealable. *Id.*

Likewise, on its face, the present custody order completely disposed of Father's modification petition, and the certified docket reveals no additional hearing date. To the extent that the trial court stated what is already implicit in custody orders, *i.e.*, that modifying a custody award is available upon petition and if proven to be in the child's best interests, that fact does not defeat the finality of the custody order. Therefore, we decline to quash this appeal.

Turning to the merits of this case, we are mindful of the following scope and standard of review of custody orders:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> *R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis,

considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (*citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

In his first issue, Father argues that the trial court violated his right to due process by ruling on his pending modification petition, without notice, during a hearing on his petition for contempt. Father correctly asserts that the trial court did not provide advance notice that modification would be an issue during the contempt proceeding. Father asserts, "At no point prior to the conclusion of the June 18 hearing/interview did the trial court give even the slightest notice that Father's custody would be challenged." Father's Brief at 27–28. Father describes this as "a custody modification by ambush." ***Id.*** at 26.

Father cites ***S.W.D. v. S.A.R.***, 96 A.3d 396 (Pa. Super. 2014), for the following legal principle:

> This Court has held that the appropriate manner to bring about a change in custody is by the filing of a petition for modification, which would follow generally, the procedure under Pa.R.C.P. No. 1915.3. ***Choplosky*** [***v. Choplosky***], 584 A.2d [340, 342-343 (Pa. Super. 1990)]. A petition for modification must be filed in order for a court to review a case for permanent modification of a custody order. ***Id.*** at 342 (citing ***Seger v. Seger***, 547 A.2d 424 (Pa. Super. 1988)). Apart from these procedures authorized under the Child Custody Act and Rules, the filing of a proper petition also serves the important purpose of providing notice and an opportunity to be heard to satisfy the requirements of due process attendant to custody proceedings. ***Id.*** Thus, while it is generally true efforts seeking to modify custody may be filed at

any time, courts cannot allow parties to forgo the general notice requirements which otherwise must be strictly observed. ***Id.***

***Id.*** at 405.

This Court has explained, "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." ***Langendorger v. Spearman***, 797 A.2d 303, 309 (Pa. Super. 2002) (citation omitted).

It is well-settled that "the modification of physical custody is an improper sanction for contempt."[4] ***J.M. v. K.W.***, 164 A.3d 1260, 1262 (Pa.

---

[4] The Child Custody Law provides as follows:

**§ 5323.  Award of custody.**

\* \* \*

**(g) Contempt for noncompliance with any custody order.—**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt.  Contempt shall be punishable by any one or more of the following:

   (i) Imprisonment for a period of not more than six months.

   (ii) A fine of not more than $500.

   (iii) Probation for a period of not more than six months.

- 16 -

Super. 2017) (*en banc*). However, we have stated, "[A] trial court may transfer physical custody at the conclusion of a contempt hearing only when the modification suits the child's best interests in light of the statutory factors and that the respondent has been given particular notice of that objective." *Id.* at 1268. We explained:

> [W]e stress that the reason for the notice requirements is more than a procedural formality. Indeed, without particularized notice that custody would also be at issue at the contempt hearing, a respondent would not be prepared to litigate the custody dispute during the contempt proceedings and the trial court would be denied the benefit of both parties' relevant evidence concerning the children's well-being. Consequently, this Court previously explained in *Langendorfer*, [797 A.2d] at 309, the trial court would lack the required information to make the "quintessentially crucial judgment" as to the children's best interests.

*Id.*

Initially, we conclude that Father's first issue is waived for his failure to lodge an objection during the subject proceeding to the trial court ruling on his modification petition at the conclusion of the contempt proceeding. *See* Pa.R.A.P. 302(a) (providing, "Issues not raised in the lower court are waived

---

> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.
>
> \* \* \*

23 Pa.C.S. § 5323(g)(1).

- 17 -

and cannot be raised for the first time on appeal."); *see also **Thompson v. Thompson***, 963 A.2d 474, 475-476 (Pa. Super. 2008) (citation omitted) (stating, "In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.").[5]

As set forth above, the trial court stated on the record in open court at the conclusion of the subject proceeding, "I can take jurisdiction of this petition for modification. I believe that it is crucial, necessary[,] and [in] the absolute best interest of these children that I give them some stability moving forward." N.T., 6/18/20, at 114. The court then inquired of Father whether he had any objection to this, and Father replied, "As best that I understand what's going on, I do not. I trust you." *Id.* at 115. As such, we deem the first issue waived.

Even if Father's first issue were not waived, we conclude that it would fail. The trial court did not modify Father's custody rights as a sanction for contempt. Indeed, Father was the petitioning party in the contempt

---

[5] Father's *pro se* status during the subject proceeding is of no consequence to our conclusion that he waived his first issue on appeal. ***See Wilkins v. Marsico***, 903 A.2d 1281, 1285 (Pa. Super. 2006) ("[*P*]*ro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.") (citation omitted).

proceeding, and the court denied that petition. Moreover, in contrast to the appellant in *J.M.*, 164 A.3d 1260, the instant trial court explained in its Pa.R.A.P. 1925(a) opinion that it modified Father's physical custody in furtherance of the Children's best interests and further, that Father had notice of the same, as follows:

> Father's Petition for Contempt requested[,] *inter alia*, that he be granted partial physical custody. Father's Petition for Modification also requested[,] *inter alia*, that he be granted partial physical custody.
>
> The hearing for the Petition for Contempt was conducted initially in a telephonic proceeding on June 11 2020[,] and, with the record remaining open, resumed on June 18, 2020[,] so that the [t]rial [c]ourt could interview the [C]hildren prior to a decision. During both portions of the hearing, Father argued why he believed that custody should be modified. Although the [t]rial [c]ourt advised Father that it was not prone to amend custody on a contempt petition unless it was in the best interests of the [C]hildren, the trial court determined at the conclusion of all evidence and an extensive conversation with the minor children, that an emergent situation existed that directly impacted the [C]hildren's safety and well[-]being and that it was in the immediate best interests of the [C]hildren to decide both petitions simultaneously. ([N.T.,] 6/18/20[, at] 111, 114). . . .
>
> Since Father himself was seeking modification of custody along with a finding of contempt in the [p]etition for [c]ontempt, there was no violation of due process, nor was it prejudicial to Father, to address modification without a specific notice that the [p]etition for [m]odification would be heard.

Trial Court Opinion, 8/13/20, at 3–4 (footnotes omitted) (some citations to record omitted).

Father's own testimony supports the court's finding that Father argued why the existing temporary custody order should be modified, as follows:

I have not had a single dinner visit [with the Children] in almost four years, a single dinner visit in almost four years. This [existing temporary] order was the culmination of me having to prove *via* a counselor that I am of safe mind and I'm [of] good ability—I'm a good father. I had the . . . counselor speak to the Master on my behalf. I mean, I don't know what else to say, but I've been dealing with this for 10 years, and . . . the thing is these children have been . . . taught, they [have] been encouraged, and now these behaviors are enabled. So this is a systemic issue. This is a very systemic issue. And I've been saying this to these [c]ourts for years. If we keep going down this path of giving full control to somebody who literally . . . does not want me to see my children, that's . . . where the argument is. I want to see my children as much as I can, and [Mother's] stance, she'll pay lip service to the [c]ourt, but she will never give me my children . . . unless the courts step in.

N.T., 6/11/20, at 22–23. Father further explained as follows:

[Mother] has fought, encouraged, and now enabled [the Children's] behavior of disrespect and noncompliance of the [temporary] order. [A]s far as [Mother's] noncompliance, I would go to the visits every single time, every single visit. Mom would physically bring [the Children] there[,] and then make a statement that she can't get them out of the car, nor would she try. I've offered solutions to this to her to her face. Okay, let's all get out of the car. I'll buy everybody dinner at Panera Bread. Let's all sit down. I've gotten excuses [from the Children], oh, my hair is wet, I can't get out of the car, or nope, I'm in my pajamas, I can't get out of the car. Whatever excuse is possible to deny my custody of my children has been given. Mom will go as far as what the order says to bring the [C]hildren there, but she won't go to . . . effectuating my custody by getting them out of the car. . . . I'm unable to get them out of the car, Mom's unable to get them out of the car. Mom refuses to punish [the Children]. . . . These behaviors are encouraged [by Mother].

*Id.* at 9–10. Father also testified, pursuant to the September 23, 2019 temporary order, that on the first occasion that the Children took the train to see him, they ran away from him on foot through the streets of Philadelphia, and he chased them on foot. *Id.* at 14–15. Further, he testified that on

- 20 -

unspecified occasions Mother took the Children to the train station for their trip to see Father, but the Children exited the train before the University City train station. *Id.* at 19–20.

Likewise, the Children's *in camera* testimony supports the trial court's finding that an emergent situation existed affecting the Children's safety and well-being. Indeed, the Children acknowledged that they refused to get out of Mother's car at the custody exchange location. N.T., 6/18/20, at 76. The Children stated that on one occasion, Father pulled T.C. out of Mother's car by her hair, and that Father then held them in his grip, causing L.C. to bump into a pole as Father took them to his car. The Children indicated that this situation culminated in the police arriving at the custody exchange location. *Id.* at 63–71. In addition, the Children testified with respect to running away from Father when they exited the train at the University City train station, that Father chased them, Father tripped L.C., and the police arrived at the scene. *Id.* at 35–62.

Based on the foregoing, we conclude that the testimonial evidence supports the trial court's decision to enter a custody award at the conclusion of the contempt hearing in furtherance of the Children's best interests. Moreover, Father had sufficient notice due to (1) his request for increased physical custody set forth in his contempt petition; and (2) his reference to the same during the subject proceeding as a result of Mother's alleged contempt and/or alienation over a ten-year period. In addition, the court had

the benefit of relevant evidence concerning the Children's well-being, namely, the Children's *in camera* testimony. As such, this case is distinguishable from ***J.M.***, 164 A.3d 1260, where we concluded that the trial court erred in transferring physical custody as a sanction for contempt because the court failed to provide notice that custody was an issue. Accordingly, even if Father's first issue were not waived, we would discern no abuse of discretion.

In his second issue, Father argues that the trial court violated his due process rights by refusing to allow him to introduce evidence both on his contempt and custody-modification petitions.[6] We conclude that this issue also is waived because Father failed to request the introduction of evidence during the subject proceeding. Pa.R.A.P. 302(a); **Thompson**, 963 A.2d at 475-476.

Even if not waived, we would conclude that Father's second issue is without merit. This Court has explained, "The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." **M.O. v. F.W.**, 42 A.3d 1068, 1072 (Pa. Super. 2012). Further, "A question regarding whether a due process violation occurred is a question of law for which the

---

[6] Father did not file an appeal from the order denying his petition for contempt. Therefore, that order is not before this Court. To the extent that Father raises an issue regarding the contempt order, we do not review it.

standard of review is *de novo* and the scope of review is plenary."

***Commonwealth v. Tejada***, 161 A.3d 313, 317 (Pa. Super. 2017).

The trial court explained in its Pa.R.A.P. 1925(a) opinion, which is supported by the testimony, as follows:

> The [t]rial [c]ourt never refused Father the opportunity to offer evidence. To the contrary, the [t]rial [c]ourt requested Father multiple times to provide evidence in support of his claims. ([N.T.,] 6/11/20[, at] 7, 38–39, 55; [N.T.,] 6/18/20[, at] 93). Father was permitted to provide his testimony and admitted that he did not have any evidence. ([N.T.,] 6/11/20[, at] 38–40).

> Father requested, during the telephonic portion of the hearing, to introduce a tracking device[;] however [,] he did not have the alleged evidence in hand to submit to the [t]rial [c]ourt ([N.T.,] 6/11/20[, at] 52–53)[,] and he did not renew his request during the in-person portion seven (7) days later. As the record was still open, [if] Father had the evidence to directly submit to the trial court, the trial court would have accepted said evidence for consideration provided that an appropriate objection was not raised.

> Father also never requested to call or question any witnesses at either portion of the hearing.

Trial Court Opinion, 8/13/20, at 4–5. We discern no abuse of discretion by the trial court. Therefore, if Father's second issue were not waived, we would conclude that it fails.

In his third issue, Father maintains the trial court violated his due process rights by demonstrating bias during the subject proceeding. Specifically, Father asserts that the trial court considered evidence outside of the record, namely, a summary of facts provided on the record in open court by Mother's counsel. Father's Brief at 29–31. We disagree.

- 23 -

In its Pa.R.A.P. 1925(a) opinion, the trial court stated as follows:

The [t]rial [c]ourt considered all evidence, presented in the form of testimony of Father and Mother, and the statements made by the [C]hildren, when rendering the decision in this matter. . . .

The [t]rial [c]ourt permitted [Mother's counsel] to argue his client's position, however, [Mother's counsel] was not sworn as a witness nor treated as such by the [t]rial [c]ourt. [Mother's counsel] stated his understanding of the factual background and procedural stance of the custody case as would be expected by the [t]rial [c]ourt of any attorney advocating for his or her client. Father, acting as his own counsel, was afforded the opportunity to do the same. [Mother's counsel's] personal knowledge of the case appeared to be based on his longstanding representation of his client[,] and there was no error in the [t]rial [c]ourt allowing [counsel] to present any facts that he believed were pertinent to his client's position and the conclusions that he wished the [t]rial [c]ourt to draw from [the] same. . . .

Trial Court Opinion, 8/13/20, at 5–6. Upon review of the subject proceedings, we discern no abuse of discretion by the court. Our thorough examination of the notes of testimony reveals that in fashioning the custody order, the court relied on the Children's *in camera* testimony. N.T., 6/18/20, at 84, 114. Father's third issue fails.

Father's fourth and fifth issues are dispositive of this case. Father argues that the court committed an error of law by neglecting to perform an analysis of 23 Pa.C.S. § 5328(a) in issuing the custody order. We are constrained to agree.

Section 5328(a) of the Act provides, "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect

the safety of the child. . . ." 23 Pa.C.S. § 5328(a). This Court has interpreted "form of custody" to mean the following seven types of custody listed in Section 5323(a): Shared physical custody; Primary physical custody; Partial physical custody; Sole physical custody; Supervised physical custody; shared legal custody; and Sole legal custody. *S.W.D.*, 96 A.3d at 402; 23 Pa.C.S. § 5323(a) (Award of custody); *Cf. M.O. v. J.T.R.*, 85 A.3d 1058, 1059–1060 (Pa. Super. 2014) (holding that the trial court was not required to address the Section 5328(a) factors because the court was deciding a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement.").

In this case, the custody order awarded Mother sole physical custody. Thus, the trial court was required to consider the following factors set forth in Section 5328(a):

### § 5328.  Factors to consider when awarding custody

**(a)  Factors.**–In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated that "[**a**]**ll** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Moreover,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013). . . . A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-823.

Instantly, the trial court failed to expressly consider the Section 5328(a) factors on the record in open court or in a written opinion or order. In failing to do so, the court committed an error of law. ***J.R.M.***, 33 A.3d at 652; ***C.B.***, 65 A.3d at 955. Thus, we are constrained to remand the matter to the trial court to consider the Section 5328(a) factors.

Accordingly, we vacate the June 24, 2020 order and remand the matter for proceedings consistent with this Memorandum. On remand, the trial court shall enumerate all of the Section 5328(a) factors and explain its consideration of them in determining the Children's best interests. In so doing, the trial court may hold a new evidentiary hearing, if necessary.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Strassburger joins the Memorandum.

Judge Lazarus files a Concurring & Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/21