**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.R.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.H. | : | No. 42 MDA 2021 |

Appeal from the Order Entered November 23, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-18-00287

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED JULY 13, 2021**

C.R.H. ("Father") appeals *pro se* from the trial court's order that (1) established custody between J.S.H. ("Mother") and him concerning their child, J.R.H.; (2) denied Father's petition for contempt; and (3) granted Mother's petition for contempt. We affirm.

Father and Mother had "a volatile, intermittent relationship" which produced J.R.H. in July 2016 and ultimately terminated acrimoniously in December 2017. ***C.R.H. v. J.S.H.***, 219 A.3d 251 (Pa.Super. 2019) (unpublished memorandum at 1-2). The trial court offered the following summary of the pertinent procedural history of the parties' custody litigation:

> On January 12, 2018, Father filed a complaint for custody seeking shared legal and physical custody of J.R.H., (hereinafter, "child"). A custody conciliation conference was held on February 13, 2018, which resulted in a risk of harm hearing being scheduled to determine if Father posed a risk of harm to the child due to his pending stalking charge where Mother was the alleged victim.[1] By

order dated April 13, 2018, the risk of harm hearing was canceled by agreement and another custody conciliation conference was scheduled.

_____

[1] An agreement was reached at the preliminary hearing that the charge would be withdrawn after 90 days if there were no violation of a no-contract provision.

Father filed a petition for interim relief on June 5, 2018, requesting that the parents share transportation for custody exchanges and that the matter proceed directly to a custody hearing.  By this time, the parents had come to an agreement whereby Father had physical custody every Monday and Wednesday from 3:00 p.m. to 7:00 p.m. and alternating weekends.  The request for interim relief was denied.  A conciliation conference occurred on July 25, 2018, after which the conciliation officer submitted a recommended order maintaining the informal custody schedule exercised by the parties.  In addition, the recommended order provided that any third parties who accompany parents to exchanges shall not leave the vehicle and shall not involve themselves in any way.  The trial court issued an order on August 22, 2018, adopting the recommended order.

On August 23, 2018, Mother filed a petition for contempt against Father, alleging that Father willfully disobeyed the order by permitting his paramour to be present and intervene at a custody exchange.  The court determined the contempt petition would be addressed at the custody hearing.

A custody hearing was held before the Honorable Jeffrey J. Reich on October 29, 2018 and October 31, 2018.  On November 15, 2018, Judge Reich issued findings and a final custody order providing for shared legal custody, retaining primary physical custody with Mother, and granting Father partial physical custody every Wednesday from 3:00 p.m. to Thursday at 8:00 a.m. and alternating weekends from Friday at 3:00 p.m. to Sunday at 4:00 p.m.  The order made provisions for one week of uninterrupted vacation custody for each parent, and each parent was directed to permit reasonable telephone access to the child and to accommodate reasonable requests of the other parent for alterations of any agreed-upon schedule.

In applying the facts to the relevant custody factors, Judge Reich expressed concern for the parties' toxic relationship and the

impact of Father's manipulative nature. The court thus found that co-parent counseling would benefit the child and ordered the parents to schedule cooperative parenting classes within ten days. Judge Reich also found Father in contempt of the interim custody order dated August 22, 2018, and awarded Mother $500.00 in attorney fees.[2]

_____

[2] Father filed a timely appeal and on June 20, 2019, the Superior Court issued a decision affirming the trial court's custody determination but reversing the contempt finding and sanction. The Superior Court found that although Father had violated the spirit of the recommended order following the custody conference of July 25, 2018, Father could not be found in contempt because the recommended order was not binding on the parties until formally adopted by the trial court, and the behavior took place prior to the trial court order adopting the recommendation. [**See C.R.H.**, **supra** (non-precedential decision at 21)].

On May 7, 2019, Father filed a petition for contempt and special relief, alleging in part that Mother was not communicating with him regarding the child's insurance coverage, Mother refused to accommodate any of Father's requests to alter the custody schedule, and Mother was denying him vacation time in violation of the custody order's vacation provision.

On June 11, 2019, Mother filed a reply to Father's petition for contempt, alleging that Father was attempting to circumvent the November 15, 2018 custody order by routinely making requests which would reduce Mother's custodial periods. Mother also alleged that Father was in violation of the court's directive regarding co-parenting counseling. Mother requested that the contempt allegations be consolidated with the custody conference, Father's petition for contempt be dismissed, Father be found in contempt of the November 15, 2018 order, and Mother be awarded $500.00 attorney fees. When the parties were unable to come to an agreement at a custody conciliation conference on June 13, 2019, a follow-up conference was scheduled.

At the follow-up conference on September 10, 2019, the parties agreed to enroll in co-parenting counseling. After another follow-up custody conference on December 10, 2019, the parties agreed to withdraw their respective contempt petitions. On

December 23, 2019, Judge Reich entered an order stating that the order of November 15, 2018 shall remain in effect.

Father filed a petition for modification and special relief in June 2020, alleging in part that Mother was not addressing the child's behavioral needs and toilet training issues, Mother frustrated Father's attempts to obtain medical treatment and insurance for the child, and Mother engaged in alienating behaviors. As examples of Mother's refusal to co-parent and alienating behaviors, Father alleged that Mother refused to allow items from Father's home to pass to Mother's home, the child had reported to paternal grandparents that Mother strongly dislikes Father and Father's spouse, Mother refused to discuss a referral that had been made to child protective services, and Mother refused to accommodate reasonable requests for phone calls with the child or modifications to the custody schedule. Father further alleged that Mother was denying Father vacation time with the child in violation of the custody order's vacation provision. Father requested sole legal custody and shared physical custody.

On June 22, 2020, the [trial court] issued an order granting Father vacation custody from June 27, 2020 to July 4, 2020, while granting Mother make-up time July 18, 2020 and July 19, 2020. On August 14, 2020, Mother filed an answer with contempt alleging that Father refused to return the child to Mother for make-up time on July 18, 2020, pursuant to the order dated June 22, 2020. Mother requested compliance with the current custody order, one day make-up time, co-parenting counseling, and $1,000.00 attorney lees. A custody conference was held on August 24, 2020, and the matter was recommended for a hearing when no agreement was reached.

On August 28, 2020, Father filed a contempt petition alleging that Mother refuses all of his reasonable requests for phone contact and modifications to the custody schedule, and she engages in parental alienation by withholding information while thwarting Father's efforts to be involved in decision-making. Father requested primary physical custody until such time as Mother completes counseling for alleged alienating behaviors and mental health issues, co-parenting counseling after Mother has completed individual counseling, $1,500.00 attorney fees, and an additional $50.00 per alleged incident of contempt.

Trial Court Opinion, 2/7/21, at 1-4 (unnecessary capitalization omitted).

On November 5, 2020, the trial court held a hearing on the pending custody modification and contempt petitions. Father, Mother, Father's current wife ("Stepmother"), and Father's mother ("Paternal Grandmother") all testified at the hearing. The trial court offered an extensive, detailed summary of the evidence which we need not restate fully herein. *See id*. at 6-16. An abridged version is as follows.

Father sought to support his petition for modification with exhibits that, in his mind, spoke for themselves. At the request of the trial court, Father offered testimony regarding each. The documents ranged from allergy testing results that showed that, contrary to Mother's prior assertion, J.R.H. was not allergic to cats,[1] to emails from J.R.H.'s daycare concerning his struggles with potty training,[2] to a printout of all of the messaging conversations between Father and Mother for approximately sixteen months period preceding the hearing, which Father maintained evidenced, *inter alia*, Mother's lack of support for Lancaster County Intermediate Unit ("IU") services to address J.R.H.'s behavioral issues.

Father explained that he was seeking sole legal custody and primary physical custody because, as his exhibits evidenced, Mother puts her needs ahead of J.R.H.'s needs, attempts to alienate J.R.H. from Father and his

_____

[1] Father acknowledged that, although J.R.H. is allergic to dogs, Father had nonetheless recently obtained a puppy which Stepmother had desired.

[2] Child was fully potty trained at the time of the modification hearing.

family, and refuses to get along with Father. Father further opined that Mother was in contempt of the November 2018 custody order through her repeated refusals of Father's requests to deviate from the custody schedule. Father admitted that he had yet to attend co-parenting counseling mandated by the November 2018 order, as well as his failure to comply with the June 2020 order requiring him to return J.R.H. to Mother on July 18, 2020, because he thought it was instead in J.R.H.'s best interests to attend a birthday party for Stepmother and her daughter.

Stepmother testified that Father devotes much time and energy to their family, and that the current arrangement does not provide them with sufficient time with J.R.H. She indicated that J.R.H. enjoys playing with her daughter and neighboring children. Stepmother stated that J.H.R.'s transitions from Father's home to Mother's custody are difficult, and that, although Stepmother attempts to be courteous to Mother at exchanges, Mother ignores her.[3]

Paternal Grandmother offered testimony that she helps Father with transportation and childcare. She attested to J.R.H's relationship with Father's family. Paternal Grandmother indicated that Mother ignores her at custody exchanges, and relayed the story of a time Mother failed to respond to a request from Father to pick J.R.H. up early from day care due to an impending

---

[3] Given the history of conflict and the prior order precluding Stepmother's participation in exchanges, it is unclear why Father and Stepmother feel the need for Stepmother to continue to be present at the exchanges, which take place at a Turkey Hill convenience store.

snowstorm, causing Paternal Grandmother to drive in conditions that doubled the length of the trip.

Mother denied some of the accusations leveled at her and acknowledged the veracity of others. Mother testified that, contrary to Father's claims, she does share pertinent information with Father, and she does not attempt to interfere with his relationship with J.R.H. Mother testified that she does seek to minimize the amount of contact she has with Father or his family to avoid fresh conflict. Mother indicated that she regularly denies Father's frequent requests for additional time with J.R.H. because Father is demanding and controlling, telling her what will happen rather than being respectful and asking for her consent. Mother further acknowledged that Father has a positive relationship with J.R.H. and has no interest in reducing Father's custodial time.

Following a thorough review of the case history and the evidence proffered at the hearing, the trial court filed a detailed opinion explaining its review of the relevant considerations and its decision that it was in J.R.H.'s best interests to maintain the existing custody schedule. It therefore entered an order providing that the parties shall continue to share legal custody, and for Mother to retain primary physical custody with Father retaining the previously-ordered periods of partial custody. The court further specified that it is in J.R.H's best interest for Mother and Father to participate in the cooperative parenting counselling that had been ordered in 2018 but not

undertaken. Additionally, in the court's opinion, it indicated that it was denying Father's contempt petition but granting the petition filed by Mother. Specifically, it found that Father knowingly and willfully disobeyed the June 22, 2020 order regarding returning J.R.H. to Mother for make-up time following Father's vacation time with him, and ordered him to pay $500 to the County of Lancaster. *See* Opinion, 11/23/20, at 22.

Father filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.[4] Father states the following claims of error for our review:

1.  The trial court erred and abused its discretion when it granted Mother primary physical custody of the child, limiting Father's periods of physical custody to alternating weekends and one weeknight per week, without a discussion about why this limited schedule for Father is in the child's best interest, in lieu of a shared physical custody schedule or awarding [F]ather primary custody upon which time [M]other can demonstrate the willingness to encourage a relationship with [F]ather.

2.  The trial court erred and abused its discretion in finding in that neither party was more likely to encourage and permit frequent and continuing contact between the child and the other party.

3.  The trial court erred and abused its discretion in finding that both parents are equally able to perform parental duties on

_____

[4] Although the trial court's custody order was dated November 20, 2020, notice of service of the order was not docketed until November 23, 2020. Hence, Father's December 20, 2020 notice of appeal was timely. We also note that, while Father failed to file a statement of errors complained of on appeal contemporaneous with his notice of appeal as is required by Pa.R.A.P. 1925(a)(2), he did comply with the trial court's January 2, 2021 order directing the filing of a statement.

behalf of the child and that both parents are very involved in the child's life giving him attention.

4. The trial court erred in concluding that in terms of healthy emotional development that this factor does not weigh in favor of either party.

5. The trial court erred and abused its discretion in finding that Mother is more capable than Father in providing for stability and continuity for the child's education, family and community life.

6. The trial court erred and abused its discretion in failing to consider that Mother's efforts to keep the child from spending time with Father as well as overt statements to the child about father as well as [M]other[']s attempts to dictate control and disrupt child's time in [F]ather's home.

7. The trial court erred and abused its discretion in limiting Father's periods of custody to the schedule imposed when the court's findings state that both parents are capable of maintaining a loving, stable, consistent and nurturing relationship that is adequate for the child's needs.

8. The trial court erred and abused its discretion in limiting Father's periods of custody to the schedule imposed when the court's findings state that both parents are able to attend to the daily physical, emotional, developmental, educational and special needs of the child and that Father is certainly capable of tending to the child's daily needs. Furthermore [M]other[']s "relaxed["] parenting style and lack of concern in lieu of [sic] the child's struggles and even parental neglect contributed greatly to the child's escalating behavior.

9. The trial court erred and abused its discretion in limiting Father's periods of custody to the schedule imposed when the court found that both parties are able to make child-care arrangements and that the distance between the parties' residences does not weigh heavily in the court's decision.

10.    The trial court erred in concluding that in terms of healthy emotional development that this factor does not weigh in favor of either party.

11.    The trial court erred and abused its discretion in heavily weighing the conflict between the parties heavily in favor of [M]other instead of heavily weighing this factor in favor of [F]ather.

12.    The trial court erred in awarding each party only one week of uninterrupted physical/vacation custody, instead of two weeks.

13.    The trial court erred and abused its discretion in finding that Father willfully disobeyed the custody order in contrast to the best interest of the child and that [M]other yet again refused an extraordinarily reasonable request to attend a joint birthday party for the child in question as well as the child[`s Stepmother] and stepsister.

14.    The trial court erred and abused its discretion in finding that [F]ather did not meet the burden of proof in [F]ather's contempt petition that [M]other refused all telephone access and reasonable requests of [F]ather even after the trial court chronicles multiple occasions in which [M]other did exactly that and even in its own opinion acknowledges [M]other's denial and undisputed prevarications.

Father's brief at 15-18 (unnecessary capitalization omitted).

The following principles govern our review of Father's challenges to the trial court's custody determination:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the

evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa.Super. 2018) (internal quotation marks omitted).

Pursuant to 23 Pa.C.S. § 5338, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S. § 5338(a). In entering any custody order, the trial court is to determine the best interests of the child though consideration of the following factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

- 11 -

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

"It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). While it is imperative that the trial court consider each of the statutory factors, "the amount of weight that a court places on any one factor is almost entirely discretionary." *O.G. v. A.B.*, 234 A.3d 766, 777 (Pa. Super. 2020). *See also D.Q. v. K.K.*, 241 A.3d 1112, 1117 (Pa.Super. 2020) ("The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special

nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." (cleaned up)).  As we have explained:

> it is not this Court's function to determine whether the trial court reached the right decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party.

*E.B. v. D.B.*, 209 A.3d 451, 468 (Pa.Super. 2019) (cleaned up) (quoting *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005)).  **See also D.Q.**, **supra** at 1117 ("[T]he knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.").

In the case *sub judice*, the trial court determined "that enumerated custody factors four (stability and continuity), six (sibling relationships), thirteen (level of conflict between the parties), and sixteen (other relevant factors) weighed in favor of Mother, while factor five (availability of extended family) weighed in favor of Father. "  Trial Court Opinion, 2/4/21, at 18 n.7.  **See also** Opinion, 11/20/20, at 16-21 (stating analysis of each factor).  The trial court found that the rest of the factors were either inapplicable or favored neither party over the other.

Father's first eleven issues attack the trial court's determinations as to specific statutory factors and its ultimate conclusion that the custody order imposed reflects application of these factors to the evidence in this case.  **See** Father's brief at 15-17.  Father contends that many of these determinations

- 13 -

were incorrect, and asserts that the trial court, finding no issues with Father's parenting ability, failed to explain why it was nonetheless in J.R.H.'s best interests "to limit Father's time with [J.R.H.] in such an extreme manner." *Id*. at 23.

The trial court cogently identified and addressed Father's specific claims of error *seriatim* in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, 2/4/20, at 18-28 (explaining the evidence supporting its credibility assessments and analysis of the individual factors, the reasoning behind the weight it placed upon them, and its overall custody determination). Father does not contend that the trial court misstated the evidence, misapplied the law, or made determinations that have no basis of support in the certified record. Stated plainly, Father's position is that the trial court erred in not seeing things his way. In arguing against the trial court's findings, Father basically asks this Court to reexamine the evidence admitted at the modification hearing in the light most favorable to his position, crediting his testimony over Mother's, and he asserts that the evidence, thus viewed, renders the trial court's decision unreasonable.[5] In other words, Father

_____

[5] For example, Father contends that his ability to provide childcare, through himself and Paternal Grandmother, is "above and beyond" the ability of Mother. Father's argument against the trial court's decision is a rhetorical question: "How is limiting [F]ather's time in the best interest of [J.R.H.] in lieu of daycare when the child is not of school age and there is no legal requirement to have any child attend a childcare service in lieu of childcare provided by an immediate and or extended family?" Father's brief at 46. *(Footnote Continued Next Page)*

"essentially ask[s] this Court to re-find facts, re-weigh evidence, and re-assess credibility. That is not our role. As evidenced by the trial court's opinion, the trial court performed a detailed and thorough analysis of the [J.R.H.]'s best interests. The trial court's findings and determinations are supported by competent evidence in the record and we will not disturb them." ***D.R.L. v. K.L.C.***, 216 A.3d 276, 286 (Pa. Super. 2019). Therefore, we conclude that Father's first eleven issues warrant no relief.

Next, Father contends that the trial court "erred in awarding each party only one week of uninterrupted physical/vacation custody, instead of two weeks." Father's brief at 56. Specifically, Father argues:

> Father has clearly demonstrated a position that facilitates opportunities for J.R.H. Vacations . . . are a part of these opportunities. In that the child is not of school age and vacations should be limited to summer recesses as J.R.H. grows closer to school age[,] why is in the best interest of the child to be limited to a single week verses 2 weeks of vacation? How is this limitation in the best interest of the child? Particularly when the trial court finds no concern as it pertains to fathers parenting, the attachment between father and J.R.H. as well as father's proactive feverish nature? How does limiting father's ability afford J.R.H. opportunities for vacations the father has demonstrated well in the best interest of the child?

---

Father does not even attempt to explain why it as an abuse of discretion for the trial court, which was clearly concerned with the adverse effects prior disruptions in routine have had on J.R.H, to accept Mother's position that it is best for J.R.H. to maintain the current arrangement because it offers schooling in addition to childcare. Instead, Father restates the testimony and suggests that a failure to accept his view as "superior" is reversible error. ***Id***. By doing so, Father does not call in to question the reasonableness of the trial court, but rather validates the trial court's findings as to Father's controlling and condescending attitude.

- 15 -

> The trial courts focus was clearly on denying father any and all modifications in an effort to frustrate father and impose its will and not the best interest of the child.

*Id*. at 56-57.

> The trial court addressed Father's claim as follows:

> Father misrepresents the vacation provision in the custody order issued on November 20, 2020. The order states: "Each parent shall be entitled to ten (10) days of uninterrupted physical/vacation custody with the child each year. The ten-day vacation period shall include the weekend period of physical custody of the child that the vacationing parent would otherwise have per the regular schedule of physical custody of the child." During the hearing, Mother offered to increase each party's vacation period from one week to ten days to alleviate conflicts that have arisen between the parties in attempting to exercise their periods of vacation custody-from weekend to weekend. Father did not object or voice any opposition to Mother's proposal.

> Moreover, Father never made a request to increase the vacation custody of each parent in his modification petition filed on June 23, 2020, nor did he make such a request at the custody hearing on November 5, 2020. As such, Father has waived this issue on appeal.

Trial Court Opinion, 2/4/21, at 28-29.

Father fails to dispute the trial court's indication that the increase in vacation time to fourteen days was not raised during the modification proceedings, and was therefore waived. Nonetheless, even assuming, *arguendo*, that the issue is preserved, it is clear that no relief is due. Father, again, points to no error of law or abuse of discretion, but merely requests that this Court to review the evidence and determine that, instead of increasing vacation from seven to ten days, it should have made it fourteen days. Such determinations and micromanagement are not the work of this

Court.  *See*, *e.g.*, *E.B. v. D.B.*, *supra* at 468 (Pa.Super. 2019) (explaining that "it is not this Court's function to determine whether the trial court reached the right decision; rather," we consider whether the trial court abused its discretion).  Moreover, while Father baldly claims that the trial court was determined to thwart him at every turn, he points to no record evidence of bias or ill-will.  Therefore, Father's final challenge to the modified custody order fails.

Father's remaining issues concern the trial court's contempt rulings.  The following principles guide our review.  "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute."  *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) (internal quotation marks omitted).  "When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge."  *Id*. (internal quotation marks omitted).

Pursuant to the statute governing custody awards,

A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

- 17 -

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S. § 5323(g)(1).

To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***J.M. v. K.W.***, 164 A.3d 1260, 1264 (Pa.Super. 2017) (*en banc*) (cleaned up).

Here, the trial court found that Father failed to prove his contempt allegations by a preponderance of the evidence, but that Mother had proven hers, and fined Father $500 in accordance with 23 Pa.C.S. § 5323(g)(1)(ii). Father contests both of these rulings.

First, Father asserts that, in failing to return child to Mother promptly on July 18, 2020, "Father clearly violated this order in the best interest of the child." Father's brief at 58. Father suggests that he was forced to violate the order because Mother refused a request that "[n]o reasonable person would view . . . as unreasonable," namely that J.R.H. attend the birthday party for Stepmother, and her daughter, and him that Father had scheduled for a time outside of his period of custody. Father contends that the trial court, in finding him in contempt for this violation, "abused its discretion in that the focus was on the court[']s authority and not the best interest of the child." ***Id***.

- 18 -

The trial court explained its ruling as follows:

On June 22, 2020, following a family business court presentation, the court issued an order granting Father's request for one week of uninterrupted vacation time. In return, the court informed Father that Mother would be entitled to make-up time because one of the weekends being granted to Father was Mother's weekend. Thereafter, the June 22, 2020 order stated that Father would return the child to Mother for make-up time on July 18, 2020 and July 19, 2020. However, Father admitted he did not return the child to Mother until 7:00 p.m. on July 18, 2020, thereby depriving Mother of one full day of make-up time.

Father acknowledged he received the court order dated June 22, 2020. But Father claimed he was not aware of the make-up time until the evening of July 17, almost one month later. Father then claimed he did not read the order until Saturday morning, July 18, 2020, after Mother sent the order to him. Given the history of this case and Father's meticulous preparation of exhibits documenting the state of affairs between the parties, this court found that Father was not credible when stating he did not read the order prior to July 18, 2020.

Father also admitted that he knowingly, intentionally and willfully disobeyed the court order after it was brought to his attention. Father explained that his family planned a combined birthday party for his wife, stepdaughter, and the child to occur on July 18, 2020, and he chose not to comply with the court order until after the festivities because he thought it was in the child's best interest to participate in the party. Text messages with Mother on July 17, 2020 and July 18, 2020 confirm that Father made a conscious decision to disregard the court order because it conflicted with his own plans.

The court properly found that Father was in contempt for knowingly violating the court order of June 22, 2020, the violation was volitional, and Father did so with wrongful intent. In consideration of Father's present conduct and history of non-compliance with directives that conflict with his own will, the court also reasonably concluded that an unconditional fine would be a suitable remedy to encourage prospective compliance with the custody order.[11]

- 19 -

_____

[11] Father's contempt of the June 22, 2020 order reflects a broader pattern of disregard for court directives. The Superior Court agreed that Father previously violated the spirit of a conciliation officer's recommended order but he could not be held in contempt for actions occurring before the recommendation was formally adopted by the trial court. In the order of November 15, 2018, the trial judge issued a directive for the parties to engage in cooperative parenting counseling, but Father did not comply because he stated he was dissatisfied with the court's custody determination. Father also did not comply with the June 22, 2020 court order because he was dissatisfied with the dates selected by the court for Mother's make-up time. Father's behavior provides ample reason to conclude that he is likely to continue to disregard the court's directives in the absence of meaningful consequences for doing so.

Trial Court Opinion, 2/4/21, at 30-31 (citations omitted).

We discern no abuse of the trial court's discretion. Contrary to Father's suggestion otherwise, the court's focus on ruling on the contempt petition was properly centered upon vindicating its authority. **See Habjan**, **supra** at 637. Further, the certified record supports the trial court's findings that the evidence sufficiently demonstrated all three elements of a contempt: (1) Father had notice of the order in question; (2) Father's disobedience of the order was volitional; and (3) Father acted willfully. **See J.M. v. K.W.**, **supra** at 1264 (stating elements of contempt); N.T. Hearing, 11/5/20, at 43-46, 81-83 (Father admitting he had notice of the letter and that he chose to follow through with his family party plans rather than obey it). Consequently, we have no basis to disturb the finding of contempt.

Finally, Father asserts that, contrary to the trial court's findings, he proved that Mother was in contempt of the prior custody order. Specifically, Father argues that he showed that Mother "consistently and in an absolute fashion violated the provisions of the previous court order providing for not only reasonable accommodations as well as access to the child while in the other parties' care." Father's brief at 59. Father highlights his evidence that, concerning telephone access to J.R.H. while Mother is enjoying her periods of custody, all Father wished to do was "to say I love you, goodnight which takes seconds[.]" *Id*. Father further cites multiple examples of Mother's rejections of his requests for deviations from the standard custody schedule, contending that, "[e]ven if the trial court does not agree with [F]ather in that all requests are reasonable, at least some of them are given the varying circumstances surrounding them." *Id*. at 60. Father maintains that the trial court's ruling in favor of Mother amounts to an abuse of discretion given that the court contemporaneously found "no issue with [F]ather's parenting and acknowledge[ed that J.R.H.] obviously wants to spend time with [F]ather[.]" *Id*.

The trial court offered the following reasons for its ruling on Father's contempt petition:

> The relevant provision of the November 15, 2018 custody order addressing reasonable requests for more time with the child states: "Each parent shall accommodate the reasonable requests of the other parent for alterations to any agreed upon schedule, as the circumstances and the best interest of the Child require." Father argues that Mother's adherence to the days specified in the

custody order was a violation because the order directs the parties to accommodate the reasonable requests of the other party.

Father testified at the custody hearing that he has made "countless" attempts to have additional custodial time with the child. Mother responded by stating that she has agreed to give Father additional custodial time, including allowing him to take the child to the zoo and to an amusement park. However, while Father believed every such request was reasonable, Mother did not agree. For example, Mother did not generally agree to the child being absent from daycare to be with Father because daycare was like a school with lesson plans and structure, and the child benefits from attending. Mother also acknowledged that her relationship with Father affects how she views these requests, primarily because Father is demanding and controlling. Father does not respect Mother and he does not ask but rather tells her how it is going to be.

To be punished for contempt, an order must be "definite, clear, and specific-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." ***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa. Super. 2006) (citations omitted). Because the order forming the basis for civil contempt must be strictly construed, any ambiguities. or omissions in the order must be construed in favor of the defendant. ***Id***.

Here, the language of the prior custody order did not give the parties guidance as to what would constitute a reasonable request to alter the custody schedule such that a refusal to accommodate the other party's request would be a violation of the order. Moreover, reasonable people can disagree as to whether a request is "reasonable." Furthermore, the court was unable to conclude that Mother refused to accommodate all of Father's requests, or that any particular refusal was motivated by wrongful intent. Therefore, Father failed to prove Mother was in contempt of the court order in this regard.

Father also asserts Mother violated the November 15, 2018 custody order by refusing his requests for telephone calls with the child. The relevant provision of the order states: "Each parent shall permit reasonable telephone access to the Child while the Child is in his or her physical custody." As noted, an order must be definite, clear, and specific, leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct, to be

punished for contempt. Once again, the November 15, 2018 custody order did not provide guidance to the parties as to what would constitute reasonable phone access, nor was it sufficiently specific to put the parties on notice of conduct that would constitute a violation of the order.

Moreover, Mother's refusal to accommodate Father's requests were not motivated by wrongful intent. Due to the child's young age, phone calls would necessarily entail additional contact between the parties and Mather testified credibly that she feared increased contact with Father would only escalate the conflict between the parties. Mother feared Father's phone calls with the child would be prolonged, involve other people, and lead to comments being made about the other party. Mother also stated that contact with Father was very stressful for her. Text messages between the parties show that at least one phone call with the child had been attempted unsuccessfully, and Mother concluded the child was too young to talk on the phone.

For these reasons, the court did not err in finding that Father failed to meet his burden of proving that Mother was in contempt of the November 15, 2018 custody order.

Trial Court Opinion, 2/4/21, at 32-34 (footnotes and most citations omitted).

We agree. Unlike the clear and specific requirement that Father willfully disobeyed, the provisions Father accused Mother of violating are open to varying interpretations. *Accord K.M.G. v. H.M.W.*, 171 A.3d 839, 847 (Pa.Super. 2017) (reversing contempt finding for the mother's failure to encourage the child to visit with the father where the order did not specifically require such encouragement). The trial court's ruling that Mother did not act with wrongful intent in declining Father's requests for phone calls and additional time is supported by the record. The trial court was free to credit Mother's testimony concerning fears of disrupting J.R.H.'s bedtime over Father's self-serving representation that such calls would take mere seconds.

Further, the trial court did not fail to act at all upon the information that Father was not receiving any telephone time with J.R.H. during Mother's more extensive periods of custody. Rather, "[t]o address this situation, the [new] custody order includes language for specific periods of telephone contact when the child is in the custody of the other parent." Trial Court Opinion, 2/4/21, at 33 n.14. The trial court's chosen course was not an abuse of discretion. ***See***, ***e.g.***, ***Mellott v. Mellott***, 476 A.2d 961, 963 (Pa.Super. 1984) (affirming denial of contempt petition because it was not of an abuse of discretion for the trial court to instead clarify and expand its order). Hence, we affirm the trial court's order.

For the foregoing reasons, we find merit in none of Father's challenges to the trial court's rulings concerning custody or contempt. We hope that Father and Mother's compliance with the now-years-past-due cooperative parenting training will enable them to communicate with each other respectfully and exercise their rights under the custody order for the benefit of J.R.H. above all else.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021

- 24 -