**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOUIS F. RUIZE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LORI ANN RYAN-RUIZE | : | |
| | : | |
| Appellant | : | No. 2146 EDA 2021 |

Appeal from the Order Entered October 4, 2021
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2019-08982

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED JULY 07, 2022**

Appellant, Lori Ann Ryan-Ruize ("Mother"), appeals from the order entered in the Northampton County Court of Common Pleas, finding her in contempt of a custody order and imposing sanctions by transferring primary physical custody of the parties' minor child S.A.R. ("Child"), to Appellee, Louis F. Ruize ("Father").[1]  For the following reasons, we affirm the finding of contempt against Mother, but vacate the transfer of custody, and remand for further proceedings.

This Court has summarized some of the relevant facts and procedural history of this case in a related matter involving these parties, as follows:

> …Child was born in January 2014, parents married in January 2018, and on December 15, 2020, the parties

---

[1] "[A] finding of contempt is final and appealable when a sanction is imposed." ***J.M. v. K.W.***, 164 A.3d 1260, 1264 (Pa.Super. 2017) (*en banc*).

divorced. The proceedings leading up to the divorce were highly contentious, with Mother and Father filing various competing petitions for protection from abuse ("PFA"), custody, and contempt.

[O]n September 24, 2019, Father filed a Complaint for Divorce including a request for custody, and Mother responded by filing a counter-claim. On January 16, 2020, the parties entered an Interim Custody Order which awarded both parties legal custody of Child, Mother primary physical custody of Child, and Father partial physical custody of Child on alternating weekends and every Tuesday for dinner. On August 31, 2020, Mother served a Notice of Proposed Relocation on Father requesting permission to move with Child to South River, New Jersey to live with Mother's friend as well as the friend's husband and teenage son, which Father opposed. On October 23, 2020, Mother filed a Petition for Modification (Relocation). The parties agreed to participate in co-parenting counseling while the petition was pending. On March 17, 2021, Mother served Father with an Amended Notice of Proposed Location, requesting to move with Child to South Amboy, New Jersey, to live with Mother's fiancé, which Father likewise opposed. On May 5, 2021, Mother filed an Amended Petition for Modification (Relocation).

The trial court held hearings on the amended relocation petition on May 11, 2021, May 12, 2021, and June 3, 2021. The trial court heard testimony from Child and parents, as well as Mike Daniels, MSW, LCSW, co-parent counselor; Soly Ruize, Father's mother; Krystal Frank, Mother's adult daughter; Cynthia Corticeiro, Mother's friend; and Alan Heisinger, Mother's fiancé. On June 25, 2021, the trial court entered an order, which denied Mother's request to relocate and amended the existing interim custody order to provide Father with visitation for three nights every other weekend and additional time with Child during the summer months.

*Ruize v. Ryan-Ruize*, No. 1472 EDA 2021, unpublished memorandum at 2-3 (Pa.Super. filed Jan. 26, 2022) (internal footnote omitted). Mother filed a timely notice of appeal from the court's denial of her relocation petition.

While Mother's appeal from the denial of her relocation petition was pending, Mother notified Father by e-mail on July 26, 2021, that she intended to move with Child from her residence in Bangor, Pennsylvania to a residence in Easton, Pennsylvania effective July 29, 2021. Both homes are located in Northampton County, but within different school districts. Mother did not comply with the notice procedures set forth in 23 Pa.C.S.A. § 5337 related to relocation in connection with this move.

On August 9, 2021, Father filed a petition for contempt and special relief asking the court to hold Mother in contempt based on her recent move from Bangor to Easton, requesting that Mother return Child to the school district in Bangor (or that the court entered an order directing Child's enrollment in her former school), and any other relief the court deemed appropriate. Mother filed an answer on August 23, 2021, contending that her move did not constitute a "relocation" for purposes of the statute because it did not significantly impair Father's custody under the existing custody order.

The court held hearings on the contempt petition on September 1, 2021, September 3, 2021, and October 4, 2021. At the time of the September 3rd hearing, Mother requested that the trial judge recuse himself, and also requested a stay of proceedings pending Mother's appeal from the denial of her relocation petition. The court denied both requests.

At the conclusion of the October 4, 2021 contempt hearing, the court granted Father's petition. As a sanction, the court immediately transferred

primary physical custody to Father and directed that Child be re-enrolled in her former elementary school. Mother filed a motion for stay on October 7, 2021, which the court denied that day. On October 22, 2021, Mother timely filed a notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) statement. On October 27, 2021, Mother filed an emergency application for stay in this Court, which this Court denied by *per curiam* order on October 28, 2021. While the current appeal was pending, on January 26, 2022, this Court affirmed the denial of Mother's petition to relocate. ***See Ruize, supra***.

Mother raises the following issues for our review:

> Did the trial court err as a matter of law and abuse its discretion in determining that Mother had relocated pursuant to 23 Pa.C.S.A. § 5322(a) and 23 Pa.C.S.A. § 5337 when she moved within Northampton County from Bangor, Pennsylvania to Easton, Pennsylvania and thereby finding Mother in contempt?

> Did the trial court err as a matter of law and abuse its discretion in finding Mother in contempt for changing the minor child's school despite the fact that Mother had primary physical custody and enrollment in public school is controlled by the Pennsylvania School Code pursuant to 23 Pa.C.S.A. § 13-1302?

> Did the trial court err as a matter of law and abuse its discretion by immediately transferring primary physical custody of the minor child from Mother to Father as a sanction of a finding of contempt despite transfer of custody not being an appropriate and/or permissible sanction pursuant to 23 Pa.C.S.A. § 5323(G) while the underlying case remains under appeal to the Superior Court?

> Did the trial court err as a matter of law and abuse its discretion in denying Mother's motion for recusal of trial court judge in the within custody proceedings?

- 4 -

> Did the trial court err as a matter of law and abuse its discretion in denying Mother's request for a stay of the custody proceedings prior to hearing any testimony while the underlying case remains on appeal to the Superior Court thereby further suggesting the trial court's bias against Mother?

(Mother's Brief at 11-12).

In her first and second issues combined, Mother argues that at the time of the custody/relocation trial that resulted in the June 25, 2021 order, Mother's residence in Bangor, Pennsylvania and Father's residence in Mount Bethel, Pennsylvania, were both located in Northampton County and were six (6) miles apart. Mother asserts that she notified Father of her intent to move from Bangor to Easton because Mother's lease in Bangor was not being extended by Mother's landlord, and Mother was unable to secure affordable housing in Bangor for her and Child. Mother contends that her landlord would only extend Mother's lease for an increase in rent, which Mother could not afford. Mother claims she did not believe that her move from Bangor to Easton would constitute a "relocation" under the statute due to the minimal distance between the cities, which are both located in Northampton County. Specifically, Mother submits that her new residence in Easton is approximately thirteen (13) miles from Father's residence in Mouth Bethel. Mother emphasizes that she produced evidence at the contempt hearings of copies of documents related to Zillow searches for apartments located in Bangor, Zillow applications, and other documents to substantiate her housing search.

Mother complains the court discounted the fact that Mother has limited

- 5 -

income based on her social security disability benefits, and credit-related issues, which impacted her ability to qualify for housing. Mother insists the court directed her to submit a summary of all of her sources of income, but then refused to admit Mother's income and expense statement into evidence as "irrelevant." Mother avers the court improperly found that Mother's motive in moving was solely to be "considerably closer" to her fiancé's residence in South Amboy, New Jersey. Mother stresses that her move to Easton only decreased her commute to her fiancé's home by approximately 20 minutes, and that the commute is still over an hour. Mother avers the court speculated that the Easton neighborhood is "one of the most dangerous neighborhoods in Northampton County," without any evidence to substantiate this claim or any assessment of risk of harm to Child.

Mother asserts that Father's residence is approximately two (2) miles from Child's school in Bangor;[2] Father's residence is approximately sixteen (16) miles from Child's school in Easton.[3] Mother contends that the court emphasized the increased distance Father would have to drive to exercise his weekday dinner visits and every other Sunday overnight visits with Child, because Father has a lengthy commute to Elmira, New York of approximately

---

[2] Father contends his residence is 1.8 miles from Child's former school in Bangor. (**See** Father's Brief at 5-6).

[3] Father asserts Mother's move increased the driving time from Father's house to Child's school from five minutes when Child attended school in Bangor, to 25-30 minutes now that Child is in school in Easton. (**See id.** at 6).

170 miles each way. Mother highlights Father's testimony acknowledging that the distance between Father's workplace in New York and Child's new school in Easton is 178 miles, so Mother's move only increased Father's commute by 8 miles as related to Father's ability to exercise his custodial rights. Mother submits that she also offered to provide all of the transportation for Father's custodial periods as well as additional custodial time during Father's dinner visits so as not to impair Father's exercise of his custodial rights.

Mother further argues that her change of school for Child based on her move did not violate the parties' shared legal custody because Mother was required to enroll Child in the school district where the primary custodial parent (Mother) resides. Mother asserts that she was the party exercising primary physical custody at the time of her move to Easton, so it was appropriate for her to enroll Child in the Easton School District. Mother concludes that her move from Bangor to Easton did not constitute a "relocation" under the statute because it did not significantly impair Father's ability to exercise his custodial rights, and this Court must reverse the finding of contempt. We disagree.

When we review a trial court's finding of contempt:

> [W]e are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This [C]ourt also has stated that each court is the exclusive judge of contempts against its process.

*G.A. v. D.L.*, 72 A.3d 264, 269 (Pa.Super. 2013) (internal citations and

quotation marks omitted).

The Child Custody Law defines relocation as a "change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). "The party proposing the relocation shall notify every other individual who has custody rights to the child." 23 Pa.C.S.A. § 5337(c)(1). The relocation notice must be given no later than the 60th day before the date of the proposed relocation (**see** 23 Pa.C.S.A. § 5337(c)(2)(i)), contain specific details about the relocation (**see** 23 Pa.C.S.A. § 5337(c)(3)), and a party entitled to receive notice may file an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation (**see** 23 Pa.C.S.A. § 5337(d)). If a party objects to relocation, the court must hold a hearing and analyze the relevant relocation factors. **See** 23 Pa.C.S.A. § 5337(g), (h).

Instantly, the trial court explained:

> At the hearing, Father testified that Mother, without notice to the [c]ourt or the agreement of Father, moved from her home in Bangor, Pennsylvania, to Easton, Pennsylvania. The move is approximately a 30 minute one way commute without traffic and during "rush hour"—school and work traffic in the morning and afternoon—the one way trip can be at least 45 minutes. Father's testimony established that the move interfered with Father's ability to have his expanded alternating weekend custody in which Father was…able to deliver child to school less than two miles from his home on Monday mornings and also interfered with Father's ability to have his Wednesday evening dinner visit in which he picked the child up from school to take her back to his home to do her homework[;] he testified at both trials that it was very important to him to be engaged in his daughter's school work and to enjoy his dinner visit with

- 8 -

[Child] at his home. Further, the 45 minute, back and forth commute was especially difficult for Father because Father's work commute was in the opposite direction, as his workplace/office is located in South Eastern New York State. Thus, Mother's move not only eliminated Father's ability to have his Sunday night expansion, but it also made his dinner visit nearly impossible as his three hour dinner visit now required Father to be in the car for an additional 45 minute commute to pick up daughter[, a] total of three hours back and forth from Bangor to Easton that evening in addition to his 2½ hour (one way) work commute. Thus, on the day of his dinner visit, Mother's move now requires Father to travel a total of 8 hours in addition to completing a full day of work. Further, the travel time eliminated his ability to spend time assisting daughter with homework and have a leisurely home cooked meal with [Child] in his home every week.

Father testified that his additional concerns were the effect that the move to Easton and the new school district had on his ability to remain active with his daughter's school activities, her supplemental educational support provided by BASD (which he claimed to have been closely involved in), as well as daughter's extra-curricular activities that were centered in Bangor. Thus, we viewed the move as causing a severe disruption to Father's existing custody order and a significant diminution of his ability to remain active in his daughter's life and to continue to preserve his bond.

(Trial Court Opinion, filed November 24, 2021, at 8-9).

The record supports the trial court's analysis. Father testified about how Mother's move increased his commute time substantially, and that Child's school in Easton also ends approximately 30 minutes later than her school in Bangor which cuts into his dinner weekday visits. In addition to the extra commute time on the days Father exercises his partial physical custody, Father explained how Mother's move would impact Father's ability to be present for Child's extra-curricular activities and Mother's move would also

interfere with Father's ability to coach one of Child's teams.

Further, Mother's move required her to enroll Child in a different school without giving Father the right to exercise his shared legal custody concerning educational decisions about Child. **See** 23 Pa.C.S.A. § 5322(a) (defining legal custody as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious, and educational decision"). Although Mother contends that she was required to enroll Child in the school district in which she resides because she had primary physical custody at the time she moved, the issue is not whether the move required Mother to enroll Child in a new school. Rather, the issue is how Mother's unilateral decision to relocate stripped Father of his right to participate in making educational decisions concerning Child per his shared legal custody. Under these circumstances, Mother's move to Easton constituted a "relocation" as defined by the statute because it significantly impaired Father's ability to exercise his physical and legal custodial rights. **See** 23 Pa.C.S.A. § 5322(a).

We recognize Mother's offers to assist with driving Child to/from Father's home during his custodial periods. Nevertheless, Mother did not make this offer until after she had already relocated. **See J.M., supra** at 1266 (stating: "Mother's *post hoc* generosity in seeking to lessen the damage to Father's rights did not negate the fact that, by relocating without permission she violated [the mandates of Section 5337]"). Essentially, Mother's actions deprived the trial court of its ability to consider any evidence to determine

whether Mother's move to Easton constituted a relocation within the meaning of the Child Custody Law. *See id.* at 1265 n.2 (stating: "As Mother abandoned the § 5337 procedures in this case, the required hearing did not occur, and the trial court was unable to confront the precise issue that Mother is trying to resurrect on appeal, *i.e.*, whether the move constituted a relocation"). Therefore, we see no abuse of discretion concerning the trial court's finding that Mother relocated and was in contempt. *See G.A., supra*.

In her third issue, Mother argues the trial court had no authority to transfer primary physical custody of Child to Father as a sanction for its finding of contempt against Mother. Mother asserts there was no pleading seeking a change of primary physical custody when the court transferred custody from Mother to Father as a contempt sanction. Mother claims the "special relief" portion of Father's contempt petition is not analogous to a motion for modification of custody. Mother contends Father's contempt petition also failed to include the requisite "Notice and Order" per Pa.R.C.P. 1915.12(a). Mother concludes the court erred as a matter of law and abused its discretion by transferring primary physical custody of Child to Father as a contempt sanction against Mother, and this Court must reverse. For the following reasons, we agree with Mother's contentions.

The Child Custody Law provides the following sanctions for contempt for noncompliance with any custody order: (i) imprisonment for not more than six months; (ii) a fine of not more than $500.00; (iii) probation for not more

than six months; (iv) an order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses); and/or (v) counsel fees and costs. 23 Pa.C.S.A. § 5323(g)(1). In general, it is improper for a trial court to modify custody arrangements without a petition for modification before it. **J.M., supra** at 1267. "The effect of this jurisprudence is that a trial court's ability to alter custody as a contempt sanction is restricted to circumstances where the responding party is given express notice that custody will be at issue during the contempt proceeding and the modification is based upon the determination of the child's best interest." **Id.**

"Pursuant to Pa.R.C.P. 1915.12(a), a contempt petition must include a section entitled 'Notice and Order to Appear.' The rule prescribes the form and content of the notice and order to appear." **Id.** at 1269. Importantly:

> [T]he reason for the notice requirements is more than a procedural formality. Indeed, without particularized notice that custody would also be at issue at the contempt hearing, a respondent would not be prepared to litigate the custody dispute during the contempt proceedings and the trial court would be denied the benefit of both parties' relevant evidence concerning the [child's] well-being.

**Id.** at 1268.

Therefore, "it is an abuse of discretion for the trial court to transfer custody from one party to the other as a contempt sanction and … custody can be modified only where the parties receive **advance** notice that custody is to be an issue at the contempt hearing and modification is based upon the

determination of the child's best interest." ***Id.*** at 1269 (emphasis added). Nevertheless:

> Under appropriate circumstances, a trial court may modify a custody order temporarily pursuant to Rule 1915.13.[6] ***See Choplosky***[ ***v. Choplosky***, 584 A.2d 340, 343 (Pa.Super. 1990)] ("'special relief' may in some cases be appropriate (and necessary) where the situation is such that, for example, temporary modification of custody or visitation rights would preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain"); 23 Pa.C.S. § 5323(b) ("The court may issue an interim award of custody to a party who has standing…in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters."). …
>
> > [6] Rule 1915.13 provides as follows:
> >
> > At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include but is not limited to the award of temporary custody, partial custody or visitation; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

***J.M., supra*** at 1270.

In ***J.M., supra***, while custody litigation between the parties was ongoing, the court specifically prohibited relocation without prior court approval. Thereafter, the mother issued notice of her proposed relocation with children from Pottsville, Schuylkill County, to Lancaster, Lancaster County. The father opposed relocation. Prior to any hearings, however, the mother relocated with children to Lancaster. The father subsequently filed a

petition for special relief and contempt. Following a hearing, the trial court found the mother in contempt, and, as a sanction, reduced her custodial rights from primary physical custody of children to shared custody. The order was to remain in effect until the underlying custody dispute was resolved.

On appeal, this Court initially decided the trial court properly found the mother in contempt, where she ignored the father's objection to her proposed relocation and acted unilaterally in moving with the children before obtaining court approval. *J.M., supra* at 1265. Regarding the transfer of custody as a contempt sanction, this Court noted that the father's contempt and special relief petition requested modification of custody, but it lacked the required notice and order to appear as outlined by Rule 1915.12. This Court explained:

> A petition for special relief is not analogous to a motion for modification, which not only implicates a thorough analysis of the children's best interest under § 5328(a), but also necessarily provides express notice that custody would be at issue. As [the f]ather neglected to issue the required notice and order to appear, he did not provide [the m]other notice that the existing custody order could be modified as a consequence of the contempt proceedings.
>
> Presently, … there was no petition to modify custody before the trial court during the contempt proceedings, [the f]ather neglected to provide the notice and order to appear pursuant to Rule 1915.12(a), and the scheduling orders that the court issued did not disclose that the trial court would address the matter of physical custody during the contempt proceeding. While [the f]ather included a custody-related prayer for relief in his contempt petition and the proposed order that he submitted for the court's approval, **[the m]other was not provided the requisite specific notice in the contempt petition and the attendant orders directing her to appear that her custody rights would be at stake. Accordingly, [the f]ather's notice to [the**

> **m]other that he sought to modify the custody arrangement during the contempt proceedings was deficient, and, absent notice of that objective, the trial court erred in modifying custody as a contempt sanction.**
>
> Finally, we observe that the certified record demonstrates that the trial court did not intend to issue special relief pursuant to its authority under Pa.R.C.P. 1915.13. … In fact, the trial court unquestionably granted [the f]ather shared physical custody as an impermissible sanction for contempt. Indeed, the court explicitly directed, "[The] appropriate sanction [against the mother] is to award shared custody until the parties undergo the trial."

*Id.* at 1270 (internal citations and footnote omitted) (emphasis added). Thus, this Court affirmed the court's adjudication of contempt for the mother's relocation but vacated the court's contempt sanction awarding the father shared physical custody.

Instantly, on August 9, 2021, Father filed a petition for contempt and special relief asking the court to hold Mother in contempt based on her recent move from Bangor to Easton, requesting that Mother return Child to the school district in Bangor (or that the court enter an order directing Child's enrollment in her former school), and any other relief the court deemed appropriate. The contempt petition did not expressly ask for modification of custody. Additionally, Father's petition did not include the "Notice and Order to Appear" mandated by Rule 1915.12(a).

At the September 1, 2021 contempt hearing, Father requested relief consistent with his petition and asked the court for "an Order directing Mother to return to Bangor[.]" (N.T. Hearing, 9/1/21, at 3). Although Father did not

- 15 -

request modification of custody, the court then stated: "Then my decision is, what do I need to do, you know, to protect not only [Father] but also the authority of the [c]ourt. Vindicate the [c]ourt's Order. So I have all kinds of tools at my disposal, including just transferring custody." (*Id.*)

At the September 3, 2021 contempt hearing, Mother objected to Father's failure to provide the "Notice and Order" per Rule 1915.12(a). (*See* N.T. Hearing, 9/3/21, at 6). At that point, Father indicated that he filed an amendment that morning including the requisite "Notice and Order." The amendment also expressly sought a modification of custody. Regarding Father's procedural defect, the court stated: "Listen, the Rules of Civil Procedure allow me to ignore minor procedural issues. Notice was given." (*Id.* at 7). The court further expressed its belief that "a [p]etition for Contempt allows me to do whatever I want to do, including modify the Order." (*Id.* at 20). "As I said before, the mere fact that you filed a contempt order, alleging a violation of the Order, allows me to enter whatever appropriate order I believe I need to do to address the contempt, including modifying the original Custody order." (*Id.* at 22). Consequently, the court denied Father's attempt to amend the petition, and stated that the court would consider only the petition filed on August 9, 2021; the court would not consider the amended petition due to lack of adequate notice to Mother. (*Id.* at 23).

The court then heard testimony from Father, Mother's former landlord in Bangor, and Mother. (*See* Trial Court Opinion at 8-13) (summarizing

testimony). Later, during an in-chambers discussion, the court stated: "I have to do something in the best interest of this child. All right. And I am not comfortable just pulling daughter from Mother. If I do not have to do that, I do not want to do that." (N.T. Hearing, 9/3/21, at 2). The court continued: "Quite frankly, I don't know that it's in [Father's] best interest for me to take custody from Mom and give it to Dad. Although, with this information, I think what happened at trial is such bad faith that I should, just for a penalty, do that because that information was hidden."[4] (*Id.* at 3). The court went on to state:

> I am trying to be as fair as I can because at this point, I don't know, sanctions have to be imposed and sanctions are going to hurt daughter, if I give Dad custody.
>
> So that is what the problem is going to be. Because this is going to be a shock to daughter, and—who's been raised and living with Mom this whole time. And daughter, who testified that she would prefer to stay in Mom's primary care, I get that. But, you know, I can't excuse Mom's bad behavior and what happened. And you know, at some point, I am going to have to bite the bullet and render a decision.
>
> But the decision is going to have to be—if she's going to go to Bangor, and Mom is not going to live in Bangor, she's going to have to live with Dad.

(*Id.* at 10-11).

At that point, Father suggested an equal shared custody arrangement

---

[4] The "hidden information" the court referred to concerned the fact that Mother knew her landlord wanted to terminate her lease agreement at the time of the relocation proceedings when Mother had sought to move to New Jersey, but Mother did not inform the court that she might be evicted from her apartment.

so that Child could attend school in Bangor. Father noted such an arrangement would not be "a giant switch of primary physical custody." (**Id.** at 11).

At the October 4, 2021 contempt hearing, the court made clear: "My Order right now is the dominant Order that governs this family, and I am going to give full faith and credit to my Order and enforce it." (N.T. Hearing, 10/4/21, at 7). **See also id.** at 9 (stating: "I said child should be with Mom. But she was supposed to live in Bangor. If [Mother] does not want to live in Bangor, then she does not want to have custody. That is how it works because it violates my Order"). At the conclusion of the hearing, the court stated: "I find that [Mother] is in contempt of my Order of [c]ourt. I am changing the Custody Order today. From this minute, Father has primary physical custody." (**Id.** at 19).

On this record, we are constrained to conclude that the trial court erred in transferring primary physical custody to Father. Contrary to the court's statement that it can "ignore minor procedural issues," this Court made clear in **J.M.** that "the reason for the notice requirements is more than a procedural formality." **See J.M., supra** at 1268. Although Father attempted to amend his petition to comply with the relevant rules of procedure and to expressly seek a modification of custody, the court denied Father's request to do so. Thus, the August 9, 2021 contempt and special relief petition at issue did not comply with the requisite notice requirements. Notwithstanding the trial

court's "warnings" to Mother throughout the contempt proceedings that a change of custody could be at play, Mother did not receive **advance** notice that custody was at issue in the contempt proceedings. Just as in *J.M.*, "Father's notice to Mother that he sought to modify the custody arrangements during the contempt proceedings was deficient, and, absent notice of that objective, the trial court erred in modifying custody as a contempt sanction." *See id.* at 1270.

Additionally, the record confirms the trial court did not intend to issue special relief pursuant to its authority under Rule 1915.13. The trial court repeatedly informed the parties during the hearings that it could transfer custody as a **contempt** sanction and was set on vindicating the court's authority based on Mother's contemptuous behavior. Indeed, the court's Rule 1925(a) opinion cites no law relevant to an award of special relief and the court did not mention at any point that it was transferring custody under its Rule 1915.13 authority.

Further, we note the court's lack of a formal "best interests" analysis in changing primary physical custody. Throughout the proceedings, the court noted that a transfer of custody would not serve Child's best interests based on Child's preference to live with Mother, Father's long work commute, and Child's history of residing with Mother. At other points, however, the court noted that it was not in Child's best interests to remain in Easton, in a small residence with Mother, at a school that was not as invested in her needs, and

in a neighborhood that was far more dangerous than Bangor. In the absence of an analysis concerning all relevant custody factors under 23 Pa.C.S.A. § 5328(a), it is unclear which factors weigh more heavily in favor of each party in light of Mother's relocation. Therefore, should Father file a petition to modify custody seeking shared equal or primary physical custody following this Court's decision, the trial court shall conduct a full custody analysis under the relevant factors. *See* 23 Pa.C.S.A.§ 5328(a).

We recognize the trial court's frustration with Mother, and we do not condone Mother's actions. Under these circumstances, however, we hold that the trial court's transfer of custody was an inappropriate contempt sanction.[5]

_____

[5] Father argues that transferring custody was an appropriate contempt sanction under 23 Pa.C.S.A. § 5337(j). That subsection provides:

> **(j)     Failure to provide reasonable notice.**—The court may consider a failure to provide reasonable notice of a proposed relocation as:
>
>     (1)   a factor in making a determination regarding the relocation;
>
>     (2)   a factor in determining whether custody rights should be modified;
>
>     (3)   a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;
>
>     (4) sufficient cause to order the party proposing relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and

*(Footnote Continued Next Page)*

We remand for further proceedings so the court can assess whether any of the contempt sanctions delineated in 23 Pa.C.S.A. § 5323(g)(1) are appropriate to vindicate the court's authority based on Mother's contemptuous behavior.

In her fourth issue, Mother argues the trial court demonstrated bias throughout this case and was unable to preside fairly and impartially. Mother asserts the court exhibited its bias against Mother in the following ways: (1) by allowing Father to proceed with his contempt petition despite Father's non-compliance with Rule 1915.12; (2) by allowing Father to proceed with his contempt petition despite the lack of a custody conference scheduled on the petition prior to a hearing, in violation of the state and local Rules of Civil Procedure; (3) the court made statements on the record that it could transfer custody as a contempt sanction while there was a pending appeal; (4) the court made statements on the record regarding Mother's motives for her move that were unsubstantiated, untrue and prejudicial; (5) the court repeatedly

---

(5)  a ground for contempt and the imposition of sanctions against the party proposing the relocation.

23 Pa.C.S.A. § 5337(j).  This subsection concerns how the court may act when ruling on a petition to relocate following a hearing.  We do not interpret this subsection as giving the trial court *carte blanche* to transfer custody as a contempt sanction, where no petition to modify custody was pending before the court.  Specifically, subsection (a) of the statute governing applicability states: "This section applies to any proposed relocation."  23 Pa.C.S.A. § 5337(a).  Here, there was no proposed relocation by Mother, so subsection (j) was not applicable during the contempt proceedings.

pre-judged evidence without taking testimony; and (6) the court made derogatory statements in reference to Mother's fiancé, and called him a "sugar daddy" in the court's opinion in support of its June 25, 2021 custody order. Mother contends the court's denial of her recusal motion was retaliatory and based on her appeal of the relocation decision. Mother concludes the court improperly denied her recusal motion, and this Court must reverse. We disagree.

Our scope and standard of review regarding a recusal motion are as follows:

> The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case. We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*Interest of D.R.*, 216 A.3d 286, 292 (Pa.Super. 2019), *aff'd*, ___ Pa. ___, 232 A.3d 547 (2020).

"A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." *Bowman v. Rand Spear & Associates, P.C.*, 234 A.3d 848, 862 (Pa.Super. 2020) (internal citation omitted). "Recusal is

required whenever there is a substantial doubt as to the jurist's ability to preside impartially." *Id.* "However, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 862-63.

Instantly, at the September 3, 2021 hearing, Mother made a motion for recusal. The court heard Mother's arguments regarding recusal and denied the motion that day. Regarding Mother's claims that the court allowed Father to proceed with his contempt petition despite non-compliance with the rules, and the court's alleged failure to hold a custody conference prior to a hearing on contempt, we disagree with Mother that any of these procedural defects demonstrate a substantial doubt as to the jurist's ability to preside impartially. *See Bowman, supra*. Likewise, the court's statements that it could transfer custody as a contempt sanction do not evidence a bias on the part of the trial court, but merely reflect the court's misinterpretation of what the law permits. With respect to Mother's complaint that the court made improper statements regarding Mother's motives for relocating, any credibility determinations concerning Mother's testimony as it relates to her motives for relocating are left to the discretion of the trial judge. *See Garr v. Peters*, 773 A.2d 183 (Pa.Super. 2001) (stating appellate court defers to credibility determinations of trial court regarding witnesses that appeared before it, as that court has

had opportunity to observe their demeanor).

Further, we disagree with Mother that the record shows that the court "pre-judged" the case. Rather, the court held multiple days of hearings on the contempt petition and allowed the parties numerous opportunities to resolve their disputes to avoid holding Mother in contempt. Significantly, the court's opinions concerning Mother's move to Easton based on the facts introduced and events occurring in the course of the current proceedings did not constitute a basis for recusal, where nothing in the record evidences "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Bowman, supra*.

Regarding the court's comment that Mother's fiancé is a "sugar daddy," the court explained:

> …I said he was in the position of a sugar daddy. I think that is what my language was in the Order, but I said very good things about him because I thought he was a very genuine man. I said in my opinion that I thought he would be a good addition to the young lady's family. I said that.
>
> I didn't criticize him as a person. I just noted that for a year, he spent over $30,000 paying major expenses for [Mother]. And when I asked him if—I asked him, if she did not accept his invitation to marry would he continue to pay her bills and he said, of course not.
>
> And I just thought that that kind of suggested a sugar daddy relationship going up until that point. So that is all it is. That is—and you know, whether or not he is or he isn't, that had nothing to do with my Order. But anyway, keep going. What else?

(N.T. Contempt Hearing, 9/3/21, at 10).

Initially, the trial court made the "sugar daddy" comment in its June 25, 2021 order related to Mother's petition for relocation—not in any disposition related to the contempt proceedings at issue in this appeal. Thus, Mother could have sought recusal of the trial judge based on this comment in her appeal following the relocation decision. Further, we agree with the trial court that any characterization of Mother's fiancé does not raise a substantial doubt as to the court's ability to preside impartially. **See Bowman, supra**. Given our exceptionally deferential standard of review, we see no abuse of discretion concerning the trial court's denial of Mother's recusal motion. **See Interest of D.R., supra**.

In her fifth issue, Mother contends that a stay of proceedings was warranted, and the trial court erred by denying her motion to stay the court's October 4, 2021 order pending the instant appeal. Mother insists the court's denial of her motion to stay is another example of the court's retaliatory actions for Mother filing an appeal from the June 25, 2021 order denying her relocation petition. Mother concludes the court's denial of the motion to stay was improper, and this Court must grant relief. We disagree that any relief is due.

The grant of a stay pending appeal is warranted if: (1) the petitioner makes a strong showing that she is likely to prevail on the merits; (2) the petitioner has shown that without the requested relief, she will suffer irreparable injury; (3) the issuance of a stay will not substantially harm other

interested parties in the proceedings; and (4) the issuance of a stay will not adversely affect the public interest. ***Pennsylvania Public Utility Com'n v. Process Gas Consumers Group***, 502 Pa. 545, 552-53, 467 A.2d 805, 808-09 (1983). "[A] petition for a stay is to be presented, in the first instance, to the tribunal which rendered the order being challenged." ***Id.*** at 554 n.8, 467 A.2d at 809 n.8. ***See also*** Pa.R.A.P. 1732(a) (stating that application for stay must ordinarily be made in first instance to trial court).

Instantly, the trial court granted Father's petition for contempt on October 4, 2021. Mother filed a motion for stay in the trial court on October 7, 2021, which the court denied that day. After filing a timely appeal, on October 27, 2021, Mother filed an emergency application for stay in this Court, which this Court denied by *per curiam* order on October 28, 2021. In the order denying relief, this Court stated that Mother "has not successfully demonstrated the satisfaction of the requirements for issuance of a stay set forth in [***Process Gas Consumers***]." (Order, 10/28/21, at 1). Because this Court has already determined that Mother did not satisfy the requirements for issuance of a stay, we cannot say the trial court erred by making the same determination. ***See Crimi v. Crimi***, No. 1349 EDA 2021, 2022 WL 1658070 at *14 (Pa.Super. filed May 25, 2022) (unpublished memorandum)[6] (stating: "Where this Court already separately denied a petition [for a stay of

---

[6] ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019).

proceedings], we could not find error by the trial court denying a petition for the same relief"). Therefore, Mother's fifth issue on appeal merits no relief.[7]

Based upon the foregoing, we affirm the portion of the court's order holding Mother in contempt but vacate the contempt sanction awarding Father primary physical custody of Child and remand for further proceedings consistent with this memorandum.

Order affirmed in part; vacated in part. Case remanded for further proceedings. Jurisdiction is relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *7/7/2022*

---

[7] In any event, as a practical matter this issue might be moot, as we cannot undo the trial court's denial of the stay to give Mother back her former primary physical custody with Child while this appeal was pending.